**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BARBARA LYNCH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-13200** |
| **FLUOR FEDERAL PETROLEUM OPERATIONS, LLC, et al.** | **SECTION: "G"(5)** |

**ORDER AND REASONS**

In this litigation, Plaintiff Barbara Lynch ("Lynch") alleges that she experienced harassment and discrimination while employed by Fluor Federal Petroleum Operations, LLC ("FFPO"), which Lynch alleges ultimately resulted in the wrongful termination of her employment on July 31, 2019.[1] Lynch brings this litigation against FFPO, Scott Sclafani, and her co-worker Stacie Davenport ("Davenport").[2] Davenport brings a counterclaim against Lynch and a crossclaim against FFPO.[3] Before the Court is FFPO's "Motion to Dismiss Pursuant to Rule 12(b)(6)," in which FFPO seeks to dismiss Davenport's crossclaim.[4] Davenport opposes the motion.[5] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion without prejudice and grants Davenport leave to file an amended crossclaim.

---

[1] Rec. Docs. 1, 6.

[2] *Id.*

[3] Rec. Doc. 57.

[4] Rec. Doc. 60.

[5] Rec. Doc. 63.

1

## I. Background

On October 18, 2019, Lynch filed a Complaint in this Court naming as defendants FFPO, Davenport, and Scott Sclafani ("Sclafani") (collectively, "Defendants").[6] On October 26, 2019, Lynch filed an Amended Complaint against Defendants.[7] In the Amended Complaint, Lynch alleges that she is a 49-year-old African American female who was previously employed by FFPO as a Procurement Contract Technician.[8] Lynch alleges that her employment was terminated on July 31, 2019, for violations of the FFPO Workplace Violence Prevention Procedure and Code of Business Conduct and Ethics.[9]

Lynch alleges, *inter alia*, that on July 30, 2019, she and Davenport got into a verbal altercation.[10] During the incident, Lynch alleges that "Davenport rushed back to [Lynch]'s cubicle, pushed her twice on the chin, grabbed her by the neck and hair and threw [Lynch] on her left side to the floor where she proceeded to mash her face with the palm of her hand and to scratch at her face with her fingertips (which lacked nails)."[11] Lynch alleges that this conduct by Davenport constituted "retaliatory harassment" and battery.[12]

---

[6] Rec. Doc. 1.

[7] Rec. Doc. 6.

[8] *Id*. at 1.

[9] *Id*. at 2.

[10] *Id*. at 18–19.

[11] *Id*. at 19.

[12] *Id*. at 19–20.

Lynch alleges that her employment was terminated on July 31, 2019, for violations of the workplace rules against fighting.[13] Lynch contends that her termination was caused by FFPO's "failure to take effective remedial action against the retaliatory harassment which culminated in the attack by Ms. Davenport making the termination a product of the harassment and therefore wrongful."[14] Thus, Lynch brings a claim against FFPO for "wrongful termination."[15]

On April 13, 2020, FFPO and Sclafani filed an Answer to the Amended Complaint.[16] In the Answer, FFPO and Sclafani "admit that FFPO is the Management and Operating Contractor for the Strategic Petroleum Reserve under a prime contract with the United States Department of Energy, that its headquarters is in New Orleans, and that it employs more than 500 employees."[17] Therefore, all parties appear to agree that Davenport and Lynch were employees of an independent contractor of the federal government.

Davenport filed an answer, counterclaim, and crossclaim on July 30, 2020.[18] Davenport asserts a counterclaim against Lynch for assault and battery.[19] Davenport alleges that Lynch "engaged in threatening, abusive, and harassing behavior" toward Davenport, including "verbal threats" and, eventually, a physical altercation in which Lynch "attacked Davenport by grabbing

---

[13] *Id*. at 20.

[14] *Id*.

[15] *Id*.

[16] Rec. Doc. 31.

[17] *Id*. at 2.

[18] Rec. Doc. 57.

[19] *Id*. at 14.

her lanyard, violently throwing her to the ground, and also pulling out her hair."[20] Davenport

alleges that, as a result of this incident, she was fired by FFPO.[21]

Davenport also brings a crossclaim ("Crossclaim") against FFPO.[22] Davenport alleges that

FFPO was negligent in protecting Davenport from Lynch's violence and that FFPO, as Lynch's

employer, is vicariously liable for the intentional torts committed by Lynch against Davenport.[23]

Davenport alleges that she made "at least seven (7) reports to her supervisor/s and/or the FFPO's

Human Resources Department concerning Lynch's behavior."[24] Additionally, Davenport claims

that she made two formal complaints about Lynch as well as four verbal reports to her supervisor.[25]

Davenport alleges that FFPO failed to take action against Lynch or follow up with Davenport

concerning her allegations against Lynch.[26]

On August 20, 2020, FFPO filed this motion to dismiss the Crossclaim.[27] On September 1,

2020, Davenport filed an opposition to the motion to dismiss.[28]

---

[20] *Id.* at 9, 11.

[21] *Id.* at 13.

[22] Rec. Doc. 57.

[23] *Id.*

[24] *Id.* at 10.

[25] *Id.*

[26] *Id.*

[27] Rec. Doc. 60.

[28] Rec. Doc. 63.

## II. Parties' Arguments

### A.   *FFPO's Arguments in Support of the Motion*

FFPO raises two principal arguments in support of the motion to dismiss Davenport's Crossclaim.[29] First, FFPO asserts that Davenport's negligence claim is barred under the Louisiana Workers' Compensation Act (the "LWCA").[30] FFPO claims that the LWCA provides the "exclusive remedy" for injuries sustained by employees while working.[31] FFPO argues that Davenport's negligence claim "falls squarely within the type of allegations the Louisiana Supreme Court has rejected" as viable under the LWCA.[32] Moreover, FFPO asserts that Davenport should be judicially estopped from arguing that her negligence claim is not barred by the LWCA because Davenport previously argued that Lynch's claims against Davenport were barred by the LWCA's exclusive remedy provision.[33]

Second, FFPO argues that it cannot be held vicariously liable for the alleged intentional torts Lynch committed against Davenport because such actions were "not employment rooted," were "not incidental to the performance of Lynch's job," and "did not further any objective of business at FFPO."[34] FFPO asserts that it is not vicariously liable for intentional torts of its employees unless the tort in question is related to the employee's employment with FFPO.[35]

---

[29] Rec. Doc. 60-1.

[30] *Id.* at 3.

[31] *Id.*

[32] *Id.* at 4.

[33] *Id.* at 4–5.

[34] *Id.* at 5.

[35] *Id.* at 6.

### B.      Davenport's Arguments in Opposition to the Motion

Davenport responds to FFPO's motion with two main arguments.  First, Davenport argues

that FFPO, as Lynch's employer, should be held vicariously liable for the alleged actions of

Lynch.[36] Davenport alleges that Lynch's actions took place "at work, during working hours, after

a work-related argument. . . ."[37] Davenport urges the Court to apply a four-factor test laid out in

*Baumesiter v. Plunkett*,[38] in which a court, when determining if vicarious liability is appropriate,

looks to "(1) whether the tortious act was primarily employment rooted; (2) whether the violence

was reasonably incidental to the performance of the employee's duties; (3) whether the act

occurred on the employer's premises; and (4) whether it occurred during the hours of

employment."[39] Davenport asserts that, under this test, FFPO can, and should, be held vicariously

liable for Lynch's alleged actions.[40]

Next, Davenport concedes that the LWCA generally prohibits negligence claims by

employees against their employers.[41] Davenport asserts that the LWCA contains an exception,

permitting claims against an employer for injuries "resulting from an intentional act."[42] Davenport

claims that, because she raises a claim against FFPO for intentional acts taken by Lynch, her claims

---

[36] Rec. Doc. 63 at 3.

[37] *Id.*

[38] 95-2270 (La. 5/21/96); 673 So. 2d 994.

[39] Rec. Doc. 63 at 3–4.

[40] *Id.* at 4–5.

[41] *Id.* at 7.

[42] *Id.*

are not barred under the LWCA.[43] Davenport also argues that FFPO violated a statutory duty to

"provide a workplace reasonably safe for the employees therein"[44] and, as a result, Davenport's

claims are not barred by the LWCA.[45] Finally, Davenport counters FFPO's argument relating to

judicial estoppel.[46] Davenport argues that her claims against FFPO are not barred by Davenport's

own arguments that Lynch's claims are barred by worker's compensation because Davenport's

claims are "distinguishable" from those raised by Lynch.[47]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for

failure to state a claim upon which relief can be granted."[48] A motion to dismiss for failure to state

a claim is "viewed with disfavor and is rarely granted."[49] "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is

plausible on its face."[50]

The "[f]actual allegations must be enough to raise a right to relief above the speculative

level."[51] The complaint need not contain detailed factual allegations, but it must offer more than

---

[43] *Id.*

[44] *Id.*

[45] *Id.* at 8.

[46] *Id.* at 8–9.

[47] *Id.*

[48] Fed. R. Civ. P. 12(b)(6).

[49] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[50] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

[51] *Twombly*, 550 U.S. at 555. Put another way, a plaintiff must plead facts that allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[52] That

is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me

accusation."[53]

Although a court must accept all "well-pleaded facts" as true, a court need not accept legal

conclusions as true.[54] "[L]egal conclusions can provide the framework of a complaint, [but] they

must be supported by factual allegations."[55] Similarly, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements" will not suffice.[56] If the factual

allegations are insufficient to raise a right to relief above the speculative level, or an "insuperable"

bar to relief exists, the claim must be dismissed."[57]

## IV. Analysis

FFPO raises two principal arguments in support of the motion to dismiss Davenport's

Crossclaim.[58] First, FFPO argues that it is not vicariously liable for the alleged actions taken by

Lynch against Davenport because such actions were "not employment rooted," were "not

incidental to the performance of Lynch's job," and "did not further any objective of business at

---

[52] *Iqbal*, 556 U.S. at 678.

[53] *Id*.

[54] *Id.* at 677–78.

[55] *Id*. at 679.

[56] *Id*. at 678.

[57] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[58] Rec. Doc. 60-1.

FFPO."[59] Second, FFPO asserts that Davenport's negligence claim is barred under the LWCA.[60]

Alternatively, FFPO contends that Davenport should be judicially estopped from arguing that her

negligence claim is not barred by the LWCA because Davenport previously argued that Lynch's

claims against Davenport were barred by the LWCA exclusive remedy provision.[61] The Court

addresses each of these issues in turn.

### A.      *Whether FFPO is Vicariously Liable for the Alleged Actions of Lynch*

Louisiana courts have held that, as to vicarious liability, "[t]he law in this area is clear that

an employer is liable for a tort committed by his employee if, at the time, the employee was acting

within the course and scope of his employment."[62] An employee is considered to be acting within

the scope of his employment when he engages in conduct that "is of the kind that he is employed

to perform, occurs substantially within the authorized limits of time and space, and is activated at

least in part by a purpose to serve the employer."[63] An employer can be liable for intentional torts

committed by his employees in the scope of their employment.[64]

In *Baumeister v. Plunkett*, the Supreme Court of Louisiana laid out a four-part test to

determine whether an employer is vicariously liable for the actions taken by their employees.[65]

---

[59] *Id.* at 5.

[60] *Id.* at 3.

[61] *Id.* at 4–5.

[62] *Baumeister*, 673 So. 2d at 996.

[63] *Wright v. Skate Country, Inc.*, 98-0217 (La. App. 4 Cir. 5/12/99); 734 So. 2d 874, 879, *writ denied*, 99-2272 (La. 11/5/99); 750 So. 2d 194 (citing *Orgeron on Behalf of Orgeron v. McDonald*, 93-1353, p. 4 (La.7/5/94); 639 So. 2d 224, 226).

[64] *See, e.g.*, *Duncan v. Celestine*, No. CV 18-6143, 2019 WL 5067122, at *3 (E.D. La. Oct. 9, 2019) ("Vicarious liability extends to intentional torts.")

[65] 673 So. 2d at 996–97.

The Louisiana Supreme Court instructs courts to consider the following factors: (1) whether the tortious act committed by the employee was "primarily employment rooted," (2) whether the tortious act was "reasonably incidental to the performance of the employee's duties," (3) whether the tortious act took place at work, and (4) whether the tortious act took place during work hours.[66] This is a fact-specific analysis and a plaintiff does not have to allege facts under all four factors to support a finding of vicarious liability.[67] However, courts have consistently held that one of the first two factors must be met as "an employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours."[68] Instead, "vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective."[69]

In determining whether an employee's acts are "employment rooted" under the first prong, courts look to whether "the predominant motive of the servant is to benefit himself or a third person," in which case an employer is not vicariously liable.[70] Conversely, if the employee's acts were motivated by a desire to benefit the employer, the employer is vicariously liable.[71] Under the second prong, courts will determine whether a dispute could be considered "incidental" to the duties of the employee such that the tortious act could be "regarded [as] a risk of harm fairly

---

[66] *Id.*

[67] *Id.* at 997.

[68] *Id.* (citing *Scott v. Commercial Union Ins. Co.*, 415 So. 2d 327, 329 (La. App. 2d Cir. 1982)); *see also Armand v. Lachney*, 2005-763 (La. App. 3 Cir. 2/1/06); 921 So. 2d 1196, 1198.

[69] *Holloway v. City of Oberlin*, 2009-324 (La. App. 3 Cir. 10/7/09); 21 So. 3d 1063, 1065.

[70] *Baumeister*, 673 So. 2d at 999.

[71] *Id.*

attributable to the employer's business . . . ."[72] In short, an employer is not vicariously liable for "conduct instituted by purely personal consideration entirely extraneous to the employer's interest."[73]

Here, Davenport urges this Court to find that Lynch was acting within the scope of her employment when she allegedly attacked Davenport.[74] Davenport has alleged facts to show that the alleged altercation took place on work premises and during work hours.[75] However, these factors alone are insufficient to show vicarious liability under Louisiana law as "an employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours."[76] In order to have a viable claim, therefore, Davenport must have alleged facts under either of the other two prongs of the *Baumeister* test.

Davenport has failed to adequately allege any such facts in the Crossclaim. Davenport alleges that Lynch's actions "were the result of employment related functions" but does not allege any additional facts to support this conclusion.[77] Davenport states that Lynch destroyed Davenport's work product.[78] Further, Davenport alleges that the altercation with Lynch took place "after a meeting within the department."[79] These allegations are not sufficient to state a vicarious

---

[72] *Id.*

[73] *Wright v. Skate Country, Inc.*, 98-0217 (La. App. 4 Cir. 5/12/99); 734 So. 2d 874, 879, *writ denied*, 99-2272 (La. 11/5/99); 750 So. 2d 194 (citing *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974)).

[74] Rec. Doc. 63 at 4.

[75] *Id.*

[76] *Scott*, 415 So. 2d at 329.

[77] Rec. Doc. 57 at 15.

[78] *Id.* at 9–10.

[79] *Id.* at 11.

liability claim against FFPO.

Under the first *Baumeister* prong, Davenport has failed to allege facts that show that the attack on Davenport was carried out by Lynch to serve a purpose of FFPO. She fails to allege facts supporting a claim that Lynch's alleged attack took place for any reason other than a personal dispute between Davenport and Lynch. Moreover, under the second *Baumeister* prong, Davenport has failed to plead facts that show that Lynch's alleged attack on Davenport was in any way "incidental" to Lynch's duties or that such an attack could in any way be "fairly attributable" to FFPO's business. Davenport worked in a "purchasing position" within FFPO[80] and Lynch worked as a "Procurement Contract Technician."[81] Nothing within either of these employment positions indicates that either party was employed for purposes of violence. Instead, Davenport has stated that working at FFPO was her "dream job."[82]

Although Davenport has not pleaded facts to form the basis of a vicarious liability claim, this does not mean that she could not do so. Short of granting a motion to dismiss, the Court may grant Davenport leave to amend the Crossclaim.[83] Accordingly, at this time, the Court will deny FFPO's motion to the extent it seeks dismissal of Davenport's vicarious liability claim and grant Davenport leave to amend the Crossclaim to address these deficiencies, if possible.

---

[80] *Id.* at 9.

[81] Rec. Doc. 6 at 1.

[82] Rec. Doc. 57 at 9.

[83] Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires."); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

**B.**      ***Whether Davenport's Claims Against FFPO are Barred by the Louisiana Workers'***
           ***Compensation Act.***

The Louisiana Workers' Compensation Act provides that an employee, injured on the job

in a work-related accident, may only seek remedies against their employer through a worker's

compensation claim.[84] The statute contains only one exception to this general rule for on-site

injuries, an exception for "intentional acts."[85] The Louisiana Supreme Court has stated that the

"only reasonable conclusion to be drawn from the legislative process" behind the LWCA is that

the Louisiana legislature "rejected attempts to make the exception any broader than 'intentional'

acts of the employer," making clear that it was "giving the exception a narrow scope, limited to

conduct which is truly intentional."[86] The Louisiana Supreme Court has held that an "intentional

act" in the context of the LWCA is equivalent to an intentional tort.[87] Intent requires the employer

either to "consciously desire[] the physical result of his act" or to "know[] that the result is

substantially certain to follow from his conduct . . . ."[88] Substantial certainty requires "more than

a reasonable probability that an injury will occur" but instead has been met in cases only where an

injury is "inevitable" or "incapable of failing."[89] Additionally, "even where a defendant's conduct

is grossly negligent, this fact alone will not allow the imputation of intent" and "mere knowledge

and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an

---

[84] La. Rev. Stat. § 23:1032.

[85] *Id.*

[86] *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99); 731 So. 2d 208, 210.

[87] *Brazley v. Tortorich*, 397 So. 2d 475, 480 (La. 1981).

[88] *Reeves*, 731 So. 2d at 211.

[89] *Id.* at 213 (citing *Jasmin v. HNV Riverfront Corp.*, 94-1497 (La. App. 4 Cir. 8/30/94); 642 So. 2d 311, 312 *writ denied* 94-2445 (La. 12/9/94); 647 So. 2d 1110)).

employer constitute intentional wrongdoing."[90] An employer's "violation of a statute alone is not

per se such an intentional act as will result in the employer's tort liability . . . ."[91]

Davenport asks this Court to find that her injuries are not barred by the LWCA because her

injures "resulted from an intentional act."[92] However, it is not sufficient under the LWCA that

*someone* committed an intentional act that resulted in an injury to an employee; rather, an

employee must bring a claim against *the person* alleged to have committed such an act.[93]

Davenport's allegations that Lynch committed intentional torts of battery and assault against her

do not serve to exempt Davenport's claims against FFPO under the LWCA.

Davenport also argues that FFPO "failed to meet a statutory duty—the duty of an employer

to provide a workplace 'reasonably safe for the employees therein."[94] Davenport asserts that her

negligence claims against FFPO are not barred under the LWCA because FFPO "failed to exercise

reasonable care" with respect to Lynch's behavior, "even in the face of repeated warnings and

complaints."[95] Davenport alleges that FFPO was negligent in failing to take any action to protect

her from Lynch despite Davenport putting FFPO on notice of Lynch's alleged behavior toward

Davenport.[96]

---

[90] *Jasmin*, 642 So .2d at 312.

[91] *Reeves*, 731 So. 2d at 213.

[92] Rec. Doc. 57 at 7.

[93] *See, e.g.*, *Miller v. Sattler Supply Co., Inc.*, 132 So. 3d 386, 387 (La. 2014) ("To recover in tort against defendants . . . plaintiffs must prove *the employer* (1) consciously desired the physical result of its act, whatever the likelihood of that result happening from its conduct, or (2) knew that the result is substantially certain to follow from its conduct, whatever its desire may be as to that result.") (emphasis added).

[94] Rec. Doc. 57 at 7.

[95] *Id.* at 8.

[96] *Id.*

While negligence generally is not actionable under the LWCA for work-related injuries, the LWCA "does not apply to injuries arising out of a dispute with another person or employee over matters *unrelated to* the injured employee's employment."[97] Regarding non-work related injuries, an employer "has a duty to exercise reasonable care for the safety of its employees and to avoid exposing them to unreasonable risks of injury or harm."[98]

In *Carr v. Sanderson Farms, Inc.*, the Louisiana First Circuit Court of Appeal reversed a state trial court order dismissing a plaintiff's negligence claims against her employer.[99] The appellate court noted that the employer was allegedly aware that an employee, with a known history of violent behavior in the workplace, had threatened to "get" the plaintiff.[100] When made aware of this threat, the employer allegedly failed to take any steps to protect the plaintiff and, as a result, the plaintiff sustained injuries in an attack by her co-worker.[101] The appellate court reasoned that "[i]f an employer knows or should know of a dangerous condition or person on his premises, the employer is obligated to take reasonable steps to protect its employees."[102] Accordingly, the appellate court found that the plaintiff had likely stated a valid claim against the

---

[97] *Carr v. Sanderson Farms, Inc.*, 2016-1064 (La. App. 1 Cir. 2/17/17); 215 So. 3d 437, 440 (internal quotation marks omitted) (emphasis added). *See also* La. Rev. Stat. §23:1031(E) ("An injury by accident should not be considered as having arisen out of the employment and thereby not covered by the provisions of this Chapter if the employer can establish that the injury arose out of a dispute with another person or employee over matters unrelated to the injured employee's employment.").

[98] *Carr*, 215 So. 3d at 440; *see also Martin v. Bigner*, 27,694 (La. App. 2 Cir. 12/6/95); 665 So. 2d 709, 712.

[99] *Carr*, 215 So. 3d at 442.

[100] *Id*. at 441.

[101] *Id*.

[102] *Id*.

employer for negligence.[103]

Here, Davenport has failed to plead sufficient facts for this Court to determine whether Davenport's negligence claim falls outside of the LWCA. Davenport has undoubtedly alleged negligence by FFPO. Davenport alleges that she was repeatedly threatened by Lynch and that she reported the threats to her supervisors at FFPO.[104] Despite putting FFPO on notice of the threats, Davenport alleges that FFPO did not take any disciplinary or corrective action against Lynch.[105] Davenport alleges that she reported her negative interactions with Lynch to FFPO's human resources department "at least seven" times, and to her direct supervisor four times.[106] She claims that she "repeatedly reported to [FFPO's Human Resources Department Manager] and her supervisor that she 'did not feel safe' in her environment."[107] She alleges that Lynch "engaged in verbal threats and attacks directed at [Davenport], usually with the use of offensive language, and destruction of her work product on several occasions . . . ."[108]

However, for a viable negligence claim to fall outside of the LWCA, the injury must have resulted from matters unrelated to the injured employee's employment."[109] But, as noted above,[110] Davenport has provided several facts that make it unclear if the altercation between Davenport and

---

[103] *Id*.

[104] Rec. Doc. 57 at 9–11.

[105] *Id*. at 11.

[106] *Id*. at 10.

[107] *Id.* at 11.

[108] *Id.* at 9.

[109] *Carr*, 215 So. 3d at 440.

[110] *See supra*, IV(A).

Lynch was related to or, conversely, unrelated to their employment. Davenport states that Lynch's alleged actions "were the result of employment related functions," but alleges no further facts supporting this conclusion.[111] Davenport also alleges that the physical altercation with Lynch took place "after a meeting within the department,"[112] possibly indicating that the altercation was not work-related. Therefore, it is unclear whether the altercation was related or unrelated to Davenport or Lynch's employment with FFPO.

Although Davenport has not pleaded facts to form the basis of a negligence claim that falls outside of the LWCA, this does not mean that she could not do so. Short of granting a motion to dismiss, the Court may grant Davenport leave to amend the Crossclaim.[113] Accordingly, at this time, the Court will deny FFPO's motion to the extent it seeks dismissal of Davenport's negligence claim and grant Davenport leave to amend the Crossclaim to address these deficiencies, if possible.

## C.       *Whether Davenport is Judicially Estopped from Bringing a Negligence Claim*

Alternatively, FFPO urges this Court to find that Davenport is "judicially estopped from denying that workers' compensation tort immunity bars her negligence claim" on the basis that Davenport had previously argued that workers' compensation barred Lynch's claims against Davenport.[114] To support this claim, FFPO points to Davenport's motion to dismiss Lynch's claims

---

[111] Rec. Doc. 57 at 15.

[112] *Id.* at 11.

[113] Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires."); *see also Carroll*, 470 F.3d at 1175.

[114] Rec. Doc. 60-1 at 4.

against Davenport, in which Davenport alleged that Lynch's claims against Davenport were barred under workers' compensation.[115]

The Fifth Circuit has defined judicial estoppel as "an equitable doctrine that prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previously proceeding."[116] A court retains discretion over whether to apply estoppel, but the principle applies generally when three factors are present: (1) when one party's position is "plainly inconsistent with its prior position," (2) "the party must have convinced a court to accept the prior position," and (3) "the party must not have acted inadvertently."[117]

Here, Davenport is not judicially estopped from claiming that FFPO is liable to Davenport under a negligence cause of action. Davenport's prior assertions that Lynch was barred from bringing a claim against Davenport due to workers' compensation law has no bearing on Davenport's own claims against FFPO. Davenport's argument that Lynch was barred from bringing a claim under workers' compensation related to Lynch's claims against *Davenport*. By contrast, Davenport's counterclaim brings negligence claims against *FFPO*. An argument regarding the applicability of a workers' compensation statute as it relates to one party is not equivalent to an argument regarding the applicability of a workers' compensation statute as it relates to a different party. Accordingly, Davenport is not estopped from bringing a negligence claim against FFPO.

---

[115] *Id.*

[116] *Heston, Next Friend of A.H v. Austin Indep. Sch. Dist.*, 816 F. App'x 977, 984 (5th Cir. 2020) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)) (internal quotation marks omitted).

[117] *Id.*

## V. Conclusion

Davenport has not alleged sufficient facts to state a vicarious liability claim against FFPO.

Additionally, Davenport has not alleged facts to show that her negligence claim against FFPO falls

outside the scope of the LWCA. Nevertheless, short of granting the motion to dismiss, the Court

will give Davenport the opportunity to amend the Crossclaim to address the deficiencies noted

herein, if possible.

**IT IS HEREBY ORDERED** that FFPO's "Motion to Dismiss Pursuant to Rule

12(b)(6)"[118] is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Davenport is granted leave to amend the Crossclaim

within twenty-one days of entry of this Order to address the deficiencies noted herein, if possible.

**NEW ORLEANS, LOUISIANA,** this 28th day of December, 2020.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[118] Rec. Doc. 60.

19