**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**BARBARA LYNCH**                                    **CIVIL ACTION**

**VERSUS**                                           **NO. 19-13200**

**FLUOR FEDERAL PETROLEUM OPERATIONS,**              **SECTION: "G"(5)**
**LLC, et al.**

<u>**ORDER AND REASONS**</u>

In this litigation, Plaintiff Barbara Lynch ("Lynch") alleges that she experienced harassment and discrimination while employed by Fluor Federal Petroleum Operations, LLC ("FFPO"), which Lynch alleges ultimately resulted in the wrongful termination of her employment on July 31, 2019.[1] Before the Court is FFPO's "Motion for Partial Summary Judgment Seeking Dismissal of Certain Claims of Plaintiff Barbara Lynch."[2] In the motion, FFPO seeks dismissal of the following: (i) Lynch's claim of unlawful termination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), (ii) any remaining claims for age discrimination under the ADEA, and (iii) Lynch's request for physical injury damages under Title VII.[3] Lynch opposes the motion.[4] The Court held oral argument on the motion on July 28, 2021. Having considered the motion, the memoranda in

---

[1] Rec. Docs. 1, 6.

[2] Rec. Doc. 172.

[3] *Id.*

[4] Rec. Doc. 188.

1

support and in opposition, the arguments made at oral argument, the record, and the applicable law, the Court grants the motion.

## I. Background

On October 18, 2019, Lynch filed a complaint in this Court naming as defendants FFPO, Lynch's co-worker Stacie Davenport ("Davenport"), and Scott Sclafani ("Sclafani") (collectively, "Defendants").[5] On October 26, 2019, Lynch filed an amended complaint (the "Amended Complaint") against Defendants.[6] In the Amended Complaint, Lynch alleges that she is a 49-year-old African American female who was employed by FFPO as a Procurement Contract Technician.[7] Lynch alleges that her employment was terminated on July 31, 2019, for violations of the FFPO Workplace Violence Prevention Procedure and Code of Business Conduct and Ethics ("Workplace Violence Policy").[8]

In the Amended Complaint, Lynch brings claims against FFPO for sexual harassment ("Count 1") and against Sclafani for battery ("Count 2").[9] Lynch alleges that "around her fifth week at work, Sclafani began to appear in her work area unnecessarily about 1-2 times/week."[10] Lynch asserts that Sclafani would attempt to engage in non-work related conversation, stand uncomfortably close to her, and sometimes touch her shoulder.[11] On February 21, 2019, Lynch

---

[5] Rec. Doc. 1.

[6] Rec. Doc. 6.

[7] *Id.* at 1.

[8] *Id.* at 2.

[9] *Id.* at 4–5.

[10] *Id.* at 4.

[11] *Id.*

alleges that Sclafani trapped Lynch in a co-worker's cubicle and forcibly massaged her shoulder.[12] Lynch asserts that Sclafani blocked the cubicle doorway by extending his arms across it, forcing her to duck under his arm to leave.[13] Lynch contends that FFPO "had notice of Sclafani's having previously sexually harassed two co-workers."[14]

Lynch also brings a claim against FFPO for race discrimination ("Count 3").[15] Lynch alleges that another co-worker, Angela Keller, displayed racial animus to Lynch by excluding Lynch from work functions, reducing her workload, and excluding her from performing certain work.[16] Lynch alleges that on December 6, 2018, Ms. Keller called Lynch a "n***er."[17] Lynch also alleges that on July 22, 2019, Sclafani called her a "black b***h."[18]

Further, Lynch brings claims against FFPO, Sclafani, and Davenport for "retaliatory harassment" and "age harassment" ("Count 4").[19] Lynch alleges that she was subjected to "retaliatory harassment" by her co-workers after making complaints to supervisors.[20] For example, Lynch claims that on February 22, 2019, she informed her supervisor, Jorge Perez ("Perez"), of Sclafani's conduct that had occurred the day before.[21] From this point forward, Lynch alleges that

---

[12] *Id.*

[13] *Id.* at 4–5.

[14] *Id.* at 5.

[15] *Id.* at 5–12.

[16] *Id.*

[17] *Id.* at 8.

[18] *Id.*

[19] *Id.* at 12–20.

[20] *Id.*

[21] *Id.* at 12.

Sclafani, Davenport, and the rest of her work group began to treat Lynch differently.[22] Lynch alleges that when co-workers saw her "in the hallway they would grab the walls and press themselves against the walls."[23] According to the Amended Complaint, on March 14, 2019, Sclafani passed by Lynch's cubicle and warned Lynch, "You cannot hide from me. You better be scared of me. You can't run from me."[24] On March 16, 2019, Lynch claims she submitted a written complaint to Ginger Roques ("Roques"), a manager in Human Resources, about Sclafani and Davenport.[25] Lynch asserts that thereafter she was moved to a cubical further away from Sclafani.[26] Lynch alleges that on May 14, 2019, Perez told Lynch directly: "I think the group is not ready for someone who looks like you and me. I think that's why you are being mistreated."[27] Lynch claims that she again spoke to Roques about Sclafani and Davenport on May 20, 2019.[28]

Lynch also claims that she was subject to "age harassment."[29] Lynch asserts that on March 21, 2019, she "found a photograph of an old gray-haired lady on her desk."[30] Lynch alleges that a similar photograph was left in or near her cubicle on several occasions.[31] Additionally, Lynch

---

[22] *Id.* at 13.

[23] *Id.* at 14.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 15.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 17.

[30] *Id.*

[31] *Id.*

alleges that she later found a soiled bandage on the floor in her cubicle.[32] Lynch states that she "interpreted this as a suggestion that she was unclean and a threat that she might be injured and need a bandage."[33]

Lynch alleges that she complained to her superiors at FFPO about the harassment by Sclafani and Davenport on several occasions.[34] According to the Amended Complaint, "[a]fter each complaint the known harassment by Sclafani and Ms. Davenport remained about the same, but the general office mistreatment would get worse."[35]

Lynch alleges that on July 30, 2019, she and Davenport got into a verbal altercation.[36] During the incident, Lynch alleges that "Davenport rushed back to Lynch's cubicle, pushed her twice on the chin, grabbed her by the neck and hair and threw Lynch on her left side to the floor where she proceeded to mash her face with the palm of her hand and to scratch at her face with her fingertips (which lacked nails)."[37] Lynch claims that she "continues to feel pain in some of those areas."[38] Lynch alleges that this conduct by Davenport constituted a battery ("Count 5").[39]

---

[32] *Id.*

[33] *Id.*

[34] *Id.* at 19.

[35] *Id.*

[36] *Id.* at 18–19.

[37] *Id.* at 19.

[38] *Id.*

[39] *Id.* at 19–20. The alleged battery is incorrectly labeled Count 4 in the Amended Complaint.

Lynch alleges that her employment was terminated on July 31, 2019, for violations of FFPO's Workplace Violence Policy.[40] Lynch contends that her termination was caused by FFPO's "failure to take effective remedial action against the retaliatory harassment which culminated in the attack by Ms. Davenport making the termination a product of the harassment and therefore wrongful."[41] Therefore, Lynch brings a claim against FFPO for "wrongful termination" ("Count 6").[42] In sum, Lynch brings the following claims against FFPO: (i) sexual harassment; (ii) race discrimination; (iii) age discrimination and retaliation; and (iv) wrongful termination.

On June 24, 2021, FFPO filed the instant motion for partial summary judgment.[43] On July 21, 2021, Lynch filed an opposition brief.[44] On July 27, 2021, with leave of Court, FFPO filed a reply in further support of the motion.[45] On July 28, 2021, the Court held oral argument on the motion. On August 24, 2021, with leave of Court, Lynch filed a sur-reply in further opposition to the motion.[46]

## II. Parties' Arguments

### A.    *FFPO's Arguments in Support of the Motion*

FFPO argues that it is entitled to summary judgment on the following issues:  (i) any claims brought by Lynch in which she alleges age discrimination and harassment under the ADEA; (ii)

---

[40] *Id.* at 20.

[41] *Id.*

[42] *Id.* The alleged wrongful termination is incorrectly labeled Count 5 in the Amended Complaint.

[43] Rec. Doc. 172.

[44] Rec. Doc. 188.

[45] Rec. Doc. 191.

[46] Rec. Doc. 211.

Lynch's wrongful termination claim; and (iii) Lynch's request for damages for physical injuries arising out of any of her claims brought pursuant to Title VII.[47] FFPO does not seek dismissal of Lynch's remaining claims in the pending motion.[48]

FFPO first contends that while the basis for Lynch's claim for age discrimination is not clear, such claims, if brought under the ADEA, must be dismissed because Lynch has failed to exhaust her administrative remedies.[49] FFPO argues that prior to filing suit under the ADEA, Lynch must file an administrative Charge of Discrimination with the EEOC.[50] FFPO claims that although Lynch filed an EEOC Charge of Discrimination, she failed to select the "age" box and failed to include any allegations in the Charge which would give rise to an age discrimination claim.[51] Therefore, FFPO argues that, to the extent it exists, Lynch's claim for age discrimination under the ADEA must be dismissed.[52]

FFPO next argues that Lynch's claim for unlawful termination must be dismissed.[53] FFPO argues that this Court should dismiss any claim Lynch brings for wrongful termination based on race and age because FFPO has provided a legitimate, non-discriminatory reason for Lynch's termination.[54] Specifically, FFPO contends that it terminated Lynch after she was involved in an

---

[47] Rec. Doc. 172-1 at 2.

[48] *Id.* at n.4.

[49] *Id.* at 4.

[50] *Id.*

[51] *Id.* at 5–6.

[52] *Id.* at 6.

[53] *Id.* at 7.

[54] *Id.* at 7–9.

altercation with Davenport, a violation of FFPO's Workplace Violence Policy.[55] Thus, FFPO argues that "[t]he record evidence demonstrates that the reason for [Lynch]'s termination was not related to her race or age and was not in retaliation for anything."[56]

FFPO further argues that Lynch has provided no evidence that FFPO's reason for terminating Lynch was pretext.[57] FFPO claims that Lynch has failed to show the existence of disparate treatment as Davenport, who is younger than Lynch and a white woman, was also terminated following the altercation.[58] FFPO argues that Lynch "cannot identify any similarly situated employee who committed the same misconduct as [Lynch] but was not terminated by FFPO."[59] Further, FFPO contends that Lynch cannot show that FFPO's reason for terminating Lynch was false or unworthy of credence because Lynch testified at her deposition that she was involved in an altercation with Davenport and admitted that she "shoved" Davenport.[60] FFPO asserts that the evidence shows that FFPO "convened an employee review board meeting to determine what action to take after Ms. Davenport and [Lynch] got into a physical fight" which "voted unanimously to terminate both employees for violating FFPO's Code of Ethics and Workplace Violence Policy."[61]

---

[55] *Id.* at 9–10.

[56] *Id.* at 11.

[57] *Id.*

[58] *Id.* at 12.

[59] *Id.* at 12–13.

[60] *Id.* at 13–16.

[61] *Id.* at 16.

FFPO further argues that any claim Lynch brings for retaliatory termination following Lynch's complaints about her coworkers likewise fails.[62] FFPO contends that to succeed on a retaliation claim under either Title VII or the ADEA, Lynch must show a causal connection between a protected activity and her termination.[63] Even assuming that Lynch's reporting of alleged harassment at the hands of her fellow employees to Perez in February 2019 was a protected activity, FFPO notes that Lynch was not terminated until July 2019, a five month gap.[64] Further, FFPO contends that even if Lynch could establish a prima facie case of retaliation, FFPO has provided a legitimate reason for termination, the altercation between Lynch and Davenport, that is not pretextual.[65]

Finally, FFPO argues that Lynch's request for damages based on physical injuries she suffered during the altercation are not cognizable under either Title VII or the ADEA.[66] FFPO alleges that Title VII provides for damages only for "emotional or psychological harm," not "physical injuries resulting from a fight."[67] Likewise, FFPO contends that the ADEA provides for only general damages, not compensatory damages.[68]

---

[62] *Id.* at 18.

[63] *Id.* at 18–19.

[64] *Id.* at 19.

[65] *Id.* at 21.

[66] *Id.*

[67] *Id.* at 23.

[68] *Id.* at 23–24.

### B.    Lynch's Arguments in Opposition to the Motion

In the opposition brief, Lynch first asserts that she maintains her wrongful termination claim as it relates to retaliation, but abandons any claim for wrongful termination due to her race or age.[69] Lynch further asserts that she brings her remaining age discrimination claims under state law, not the ADEA, and argues that such claims should not be dismissed.[70] She further opposes dismissal of her request for damages related to her physical injuries.[71]

Lynch contends that her request for damages for the physical injuries she sustained in the altercation with Davenport should not be dismissed.[72] Lynch argues that her request for damages for her physical injuries is not brought solely under Title VII.[73] For example, Lynch claims that she may have a damages claim against FFPO for vicarious liability arising out of the battery committed by Davenport.[74] Further, Lynch alleges that to the extent she does seek physical injury damages for her claims arising under Title VII, the statute provides for such damages.[75] Lynch contends that because physical injury damages are not specifically excluded in the language of the statute, they are permissible.[76] Lynch asserts that this Court should use its "broad equitable powers

---

[69] Rec. Doc. 188 at 1.

[70] *Id.*

[71] *Id.*

[72] *Id.* at 4.

[73] *Id.* at 1.

[74] *Id.* at 2.

[75] *Id.* at 4–5.

[76] *Id.* at 5.

to fashion a damage (money) remedy" in order to make a Title VII plaintiff whole.[77] Lynch argues that without damages from FFPO for her physical injuries, she can only seek damages from Davenport, an "uninsured individual," which will not make her whole.[78]

Lynch further argues that the real reason she was terminated was as retaliation for her complaints about her coworkers. Therefore, Lynch contends her wrongful termination claim, as it relates to retaliation, should not be dismissed.[79] Lynch highlights that the Employee Review Board tasked with determining whether Lynch was subject to termination consisted of, among others, Todd Almquist ("Almquist"), a manager in Human Resources, and Perez, Lynch's boss.[80] Lynch seemingly argues that Almquist and Perez voted to terminate Lynch's employment because they believed Lynch was "a complainer and not a team player."[81] Lynch claims that while the victim of an altercation would not be in violation of FFPO's Workplace Violence Policy and therefore would not be terminated, the Board failed to determine the aggressor in the fight between Lynch and Davenport.[82] Lynch claims that the "close temporal proximity" of her complaints to management and her termination establishes a causal connection between her complaints and her termination.[83]

---

[77] *Id.* at 5–9.

[78] *Id.* at 9.

[79] *Id.* at 10.

[80] *Id.* at 11.

[81] *Id.* at 12.

[82] *Id.* at 11.

[83] *Id.* at 13.

Lynch further argues that FFPO has failed to provide a legitimate, nondiscriminatory reason for her termination.[84] Lynch contends that FFPO's claim that it fired Lynch for violating its Workplace Violence Policy is not legitimate because such policy violates Lynch's right to self-defense.[85] Lynch contends that "[u]nder the Zero Tolerance Policy she is given an impossible choice - defend herself (and lose her job) or keep her job (and take a beating)."[86] Moreover, Lynch argues that FFPO's reason for terminating her employment was pretextual.[87] Lynch claims that she was fired because she was deemed to be a complainer, and alleges that the fact that the Board did not determine whether Davenport or Lynch was the aggressor, and instead fired both, makes FFPO's reason for termination "implausible."[88]

## C.    *FFPO's Arguments in Further Support of the Motion*

In reply, FFPO first reiterates its argument that Title VII does not provide for damages for physical injuries.[89] FFPO contends that "Title VII's plain statutory language, case law cited by FFPO, and statutory construction rules all support FFPO's contention Title VII does not permit recovery of physical injury damages."[90] FFPO asserts that this Court should "decline to 'imply' an unprecedented—and statutorily unavailable—remedy under Title VII" and award Lynch damages

---

[84] *Id.* at 14.

[85] *Id.*

[86] *Id.*

[87] *Id.* at 15.

[88] *Id.*

[89] Rec. Doc. 191-2 at 2.

[90] *Id.*

for her Title VII claims arising out of her altercation with Davenport.[91] FFPO further argues that Lynch has made no other claim that provides for physical injury damages, as Lynch has failed to state a vicarious liability claim against FFPO in the Amended Complaint and this Court should not permit Lynch to do so now.[92]

Moreover, FFPO argues that Plaintiff's retaliatory discharge claim fails. FFPO claims that Plaintiff has failed to show a prima facie case of retaliation under Title VII.[93] FFPO avers that Plaintiff has not provided evidence that she was engaging in a protected activity when making complaints to her supervisors. In support, FFPO notes that the complaints made near the time of Lynch's termination were not about harassment she was facing in violation of Title VII and thus were not protected activity.[94] Moreover, FFPO contends that Plaintiff has failed to show that FFPO's termination decision was a pretext.[95] FFPO claims that Plaintiff has provided no evidence of retaliatory animus on the part of Almquist or Perez, as members of the Employee Review Board. Instead, FFPO asserts Plaintiff provides mere speculation that she was fired for her complaints, which is insufficient to overcome summary judgment.[96]

---

[91] *Id.* at 3.

[92] *Id.* at 4–5.

[93] *Id.* at 5.

[94] *Id.* at 5–7.

[95] *Id.* at 8.

[96] *Id.* at 8–10.

### D. *Lynch's Arguments in Further Opposition to the Motion*

Lynch filed a sur-reply brief in order to highlight *Myree v. Loc*, a case out of the Western District of New York.[97] Lynch argues that *Myree* is an example in which a district court granted equitable relief under Title VII.[98] Lynch re-asserts that "Title VII not only permits, but equitably requires full damages for bodily injury."[99]

## **III. Legal Standard**

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[100] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[101] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[102] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a

---

[97] Rec. Doc. 211.

[98] *Id.*

[99] *Id.* at 2.

[100] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[101] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[102] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

matter of law.[103] The nonmoving party may not rest upon the pleadings.[104] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[105]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[106] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[107] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[108] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[109]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory

---

[103] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[104] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[105] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[106] *Celotex*, 477 U.S. at 323.

[107] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[108] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[109] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[110] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[111] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[112]

## IV. Analysis

FFPO argues that it is entitled to summary judgment on the following: (i) Lynch's wrongful termination claim; (ii) Lynch's age discrimination and harassment claim under the ADEA; and (iii) Lynch's request for damages for physical injuries.[113] Each argument is discussed in turn below.

### A.   *Wrongful Termination Claim*

In the Amended Complaint, Lynch alleges that her termination was "caused by [FFPO]'s failure to take effective remedial action against the retaliatory harassment which culminated in the attack by Ms[.] Davenport making the termination a product of the harassment and therefore wrongful."[114] In opposition to the instant motion, Lynch clarifies that she does not seek to pursue wrongful termination claims based on race or age discrimination but instead only on the basis of retaliation for Lynch's complaints against co-workers.[115]

Title VII of the Civil Rights Act of 1964 "prohibits two distinct types of employment

---

[110] *Little*, 37 F.3d at 1075 (internal citations omitted).

[111] *Morris*, 144 F.3d at 380.

[112] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[113] Rec. Doc. 172-1 at 2.

[114] Rec. Doc. 6 at 20.

[115] Rec. Doc. 188.

practices: (1) employment discrimination based on race, color, religion, sex, or national origin, and (2) retaliation against an employee who has opposed discrimination or been involved in a discrimination claim."[116] The burden-shifting framework established in *McDonnell Douglas Corp. v. Green* governs claims alleging discrimination under Title VII, as well as allegations of retaliation.[117] To survive summary judgment in a case under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of retaliation.[118]

If the plaintiff can establish a prima facie case of retaliation, the burden will shift to the defendant to articulate a legitimate, nondiscriminatory reason for an adverse employment action.[119] The defendant must point to admissible evidence in the record,[120] but the burden is one of production, not persuasion.[121] The defendant is not required to show that the employment decision was proper, only that it was not discriminatory.[122] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse

---

[116] *Smith v. Xerox Corp.*, 584 F. Supp. 2d 905, 907 (N.D. Tex. 2008), *aff'd*, 602 F.3d 320 (5th Cir. 2010) (internal citations omitted). It is unclear if Lynch seeks to bring a retaliation claim under the ADEA as well as Title VII. Regardless, as detailed in the Court's analysis below, Lynch's claims under the ADEA must be dismissed for failure to exhaust her administrative remedies.

[117] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014)).

[118] *McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Mendoza v. Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013) (applying the *McDonnell Douglas* framework to discrimination and retaliation claims).

[119] *McDonnell Douglas Corp.*, 411 U.S. at 802.

[120] *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981).

[121] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

[122] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007). *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

employment action.[123] If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory or legitimate purposes offered by the defendant are merely a pretext for discrimination or retaliation.[124] A plaintiff can do this by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false or "unworthy of credence."[125]

In the instant motion, FFPO argues that Lynch cannot establish a prima facia case of retaliation. To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, a plaintiff must establish that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action.[126] Under the first prong, an employee engages in activity protected by Title VII when the employee has "opposed any practice made an unlawful employment practice" by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[127]

"Title VII retaliation claims must be proved according to traditional principles of but-for causation."[128] However, at the prima facie stage, a plaintiff need not establish but-for causation.[129] In certain instances, the Fifth Circuit has held that temporal proximity between the

---

[123] *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

[124] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[125] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

[126] *McCoy*, 492 F.3d at 557 (citing *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).

[127] 42 U.S.C. § 2000e-3(a); *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

[128] *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020).

[129] *Id.*

termination and the protected conduct may be sufficient to establish causation.[130] "Where the only evidence in support of a causal connection between . . . protected conduct and the alleged retaliation is temporal proximity, the interval must be 'very close,' and a three-to-four month gap does not suffice."[131] Temporal proximity, however, is only "one indicia" of causation.[132] In most retaliation cases, "[the] 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'"[133] The Fifth Circuit has emphasized that "the focus must be on the final decisionmaker; that is, the plaintiff must present evidence that the final decisionmaker with respect to the adverse employment action was aware of the plaintiff's protected conduct."[134]

Here, the parties focus much of their briefing on whether Lynch has established causation through temporal proximity. FFPO does not dispute that Lynch engaged in protected activity when she made complaints about Keller and Sclafani in December 2018 and February 2019, respectively, but argues that a five month gap between Lynch's February 2019 complaint and her termination on July 31, 2019 is insufficient to establish causation.[135] However, FFPO disputes that any other complaints, closer in time to Lynch's termination, constitute protected activity. Lynch alleges that she made complaints in June and July 2019, shortly before her termination on July 31,

---

[130] *See Nowlin v. Resolution Trust Corp.,* 33 F.3d 498, 508 (5th Cir. 1994); *Brown,* 969 F.3d at 577.

[131] *Fisher v. Bilfinger Indus. Servs. Inc.*, No. 20-30265, 2021 WL 2621285, at *2 (5th Cir. June 24, 2021).

[132] *See Nowlin,* 33 F.3d at 508.

[133] *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)).

[134] *Everett v. Cent. Miss., Inc. Head Start Program,* 444 F. App'x 38, 46 (5th Cir. 2011) (citing *Ackel v. Nat'l Commc'ns, Inc*., 339 F.3d 376, 385 (5th Cir. 2003)).

[135] Rec. Doc. 172-1 at 20.

19

2019, which were protected.[136] As evidence of such complaints, Lynch points to her own declaration.[137] Given the temporal proximity between these complaints and her termination, Lynch asserts that she has established causation.[138] In response, FFPO argues that these later complaints made by Lynch did not include reports of harassment in violation of Title VII and therefore do not constitute protected activity.[139] FFPO further argues that Lynch's own declaration is not competent summary judgment evidence.[140] Without evidence that the June or July 2019 complaints made by Lynch were protected activities, FFPO argues that Lynch cannot show causation through temporal proximity.

This Court need not decide whether Lynch has established causation through temporal proximity, however, as temporal proximity is only "one indicia" of causation.[141] FFPO does not dispute that Plaintiff's complaints in December 2018 and February 2019 were protected activity.[142]

---

[136] Rec. Doc. 188-1.

[137] Rec. Doc. 188-2.

[138] Rec. Doc. 188 at 13.

[139] Rec. Doc. 191-2 at 6.

[140] Rec. Doc. 201. At oral argument, the Court ordered Lynch to brief whether a party's own declaration was competent summary judgment evidence, and Lynch filed a memorandum arguing that it was. Rec. Doc. 197. In response, FFPO filed a brief arguing the opposite—that without other evidence, a self-serving affidavit was not enough to defeat summary judgment. Rec. Doc. 201. In analyzing this issue, this Court notes that the caselaw surrounding the applicability of so-called self-serving affidavits is unclear in this Circuit. On one hand, the Fifth Circuit has "repeatedly held that self-serving affidavits, without more, will not defeat a motion for summary judgment." *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 F. App'x 306, 307 (5th Cir. 2011) (per curiam) (citing *DirectTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001)). Conversely, the Fifth Circuit has held that "an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving." *See C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011); *see also Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 310 n.5 (5th Cir. 2020); *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 290 (5th Cir. 2020).

[141] *See Nowlin*, 33 F.3d at 508.

[142] Rec. Doc. 172-1 at 20.

In most retaliation cases, "[the] 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'"[143] Lynch has pointed to evidence outside of her own declaration establishing that at least one member of the Employee Review Board, Almquist, had knowledge of Lynch's prior complaints while deciding whether to terminate her. For example, Lynch highlights the deposition testimony of Almquist, in which he testified that he concluded that Lynch was "not supporting the team" based on Lynch's complaints against her coworkers.[144] Taking all facts in the light most favorable to Lynch, she has pointed to evidence showing that at least one of the final decisionmakers who decided to terminate her employment was "aware of the plaintiff's protected conduct."[145] Therefore, Lynch has established a genuine issue of fact as to her prima facie case of retaliation.

As stated above, if a plaintiff can establish a prima facie case of retaliation, the burden will shift to the defendant to articulate a legitimate, nondiscriminatory reason for termination.[146] The defendant must point to admissible evidence in the record,[147] but the burden is one of production, not persuasion.[148] Here, FFPO has clearly provided a legitimate, non-discriminatory reason for terminating Lynch—her role in the altercation with Davenport, an action prohibited under FFPO's

---

[143] *Medina*, 238 F.3d at 684 (quoting *Sherrod*, 132 F.3d at 1122).

[144] Rec. Doc. 188-3 at 18.

[145] *Everett*, 444 F. App'x at 46 (citing *Ackel*, 339 F.3d at 385).

[146] *Id.*

[147] *Tex. Dep't of Cmty. Affs.*, 450 U.S. at 255.

[148] *Russell*, 235 F.3d at 222.

Workplace Violence Policy.[149] FFPO points to Lynch's own deposition testimony, in which Lynch admitted that she "shoved" Davenport.[150] While Lynch alleges that FFPO's reason for terminating Lynch failed to take into account Lynch's "right of self-defense,"[151] FFPO is not required to show that the employment decision was proper, only that it was not discriminatory.[152] "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for an adverse employment action.[153] FFPO has met this burden.

Given that FFPO has satisfied its burden of production, the burden shifts back to Lynch to show that the non-discriminatory and legitimate purpose offered by FFPO—namely, Lynch's violation of the company's Workplace Violence Policy—is merely a pretext for retaliation.[154] Lynch must "offer evidence that the adverse action would not occurred but for her employer's retaliatory motive."[155] Lynch can do this by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false or "unworthy of credence."[156] The plaintiff has the burden to "present sufficient evidence to find that the employer's asserted justification is false."[157] Neither a tenuous inference, nor the plaintiff's subjective belief, is sufficient to establish

---

[149] Rec. Doc. 172-1 at 9–10.

[150] Rec. Doc. 172-4 at 20.

[151] Rec. Doc. 188 at 14.

[152] *LeMaire*, 480 F.3d at 390. *See also Perez*, 307 F.3d at 325; *Mayberry*, 55 F.3d at 1091 ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

[153] *Little*, 924 F.2d at 97.

[154] *Laxton*, 333 F.3d at 578.

[155] *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 619 (5th Cir. 2020).

[156] *Moss*, 610 F.3d at 922.

[157] *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 903 (5th Cir. 2000).

22

pretext.[158] "In deciding whether summary judgment is warranted, the court should consider numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered."[159]

Lynch does not allege disparate treatment. Instead, Lynch's argument for pretext hinges on her claim that FFPO's proffered reason for terminating Lynch is unworthy of credence because such termination decision was not based on the fight she had with Davenport, but instead the numerous complaints she made against coworkers.[160] As support, Lynch points to Almquist's "wobbling, flip-flopping" deposition testimony, in which he testified that Lynch had made multiple complaints and was not a team player, and the failure of the Employee Review Board to determine the aggressor of the altercation between Davenport and Lynch.[161]

Lynch has failed to point to any evidence that FFPO's proffered reason for termination was pretextual. While Lynch alleges that Almquist and Perez, both members of the Employee Review Board tasked with determining whether Lynch should be fired, knew of Lynch's prior complaints and thought that Lynch did not support her coworkers, Lynch fails to point to any evidence that establishes that but for Lynch's complaints, she would not have been terminated. Instead, Almquist testified at his deposition that the altercation was a violation of FFPO's Workplace Violence Policy

---

[158] *Id.*; *see also Ray v. Tandem Computs., Inc.*, 63 F.3d 429, 434 (5th Cir. 1995).

[159] *Brown*, 969 F.3d at 578 (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)) (internal quotation marks omitted).

[160] Rec. Doc. 188 at 15.

[161] *Id.*

and a "blatant safety violation."[162] Since "there was no question that the event happened," Almquist testified "it was determined that she would be terminated."[163] Further, while Lynch takes issue with FFPO's failure to ascertain the aggressor of the altercation, Almquist testified at his deposition that although FFPO would "absolutely" have been interested in who the aggressor was in the altercation, "[t]here was no way to determine who the aggressor was" even after the Board conducted interviews and involved the police.[164] Given that Lynch has not provided any evidence that FFPO's proffered reason for termination was pretext, the Court grants FFPO's motion for summary judgment as to Lynch's retaliation claim.

**B.      *Age Discrimination Claim***

Lynch also brings an age discrimination claim. In the Amended Complaint, Lynch alleges that she suffered discrimination due to her age, specifically in the form of finding a "photograph of an old gray-haired lady on her desk."[165] Lynch alleges that the day before she found the photograph she heard Davenport state "Where are you, Emma? I can't find Emma. I can't find the picture. I can't find it. Oh, well, I'll just print another one."[166] Lynch avers that she saw Davenport "print what looked like a photograph of a face on a copier."[167] Lynch does not specify the legal basis for her age discrimination claim, yet does assert that "[j]urisdiction for all counts except the

---

[162] Rec. Doc. 188-3 at 2.

[163] *Id.*

[164] *Id.* at 3, 6.

[165] Rec. Doc. 6 at 17.

[166] *Id.*

[167] *Id.*

battery counts is based on 28 USC sec 1343."[168]

In the instant motion, FFPO argues that Lynch's age discrimination claim, which FFPO contends arises under the ADEA, should be dismissed because Lynch has not exhausted her administrative remedies for such claim.[169] FFPO contends that Lynch failed to check the "age" box on her EEOC Charge of Discrimination, and argues that such Charge "is devoid of any mention of 'age,' devoid of the age-related allegations contained in [the] Complaint, and fails to include any allegation that could 'give rise' to [Lynch's] claim of age harassment."[170] In opposition, Plaintiff asserts that she "contests dismissal of her ADEA claim because the complaint admits of being pled under the state age discrimination law."[171]

To the extent Lynch brings a claim for age discrimination against FFPO under the ADEA, the Court agrees with FFPO that such claim must be dismissed. The Fifth Circuit "has long required plaintiffs to exhaust their administrative remedies before bringing suit" in federal court under the ADEA.[172] In order to file suit under the ADEA in federal court, a plaintiff must first file a charge with the EEOC within 300 days of the alleged discriminatory act.[173] Once the EEOC issues a right-to-sue letter to the party who has filed the EEOC charge, that party has 90 days to

---

[168] *Id.* at 1.

[169] Rec. Doc. 172-1 at 4–6.

[170] *Id.* at 6.

[171] Rec. Doc. 188 at 1.

[172] *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006) (Title VII). *See also Walton-Lentz v. Innophos, Inc.*, 476 F. App'x 566, 569 (5th Cir. 2012) (ADEA).

[173] *Price*, 459 F.3d at 598 (citing 42 U.S.C. § 2000e, *et seq.*); *Walton-Lentz*, 476 F. App'x at 570 (citing 29 U.S.C. § 626(d)(1)(B)).

file an action in federal court.[174] Lynch did not check the "age" box in filing her Charge and failed to mention age in her filing with the EEOC, as admitted by Plaintiff in her deposition testimony.[175] Plaintiff is thus barred from litigating the issue under the ADEA until exhausting her administrative remedies.

### C.    *Request for Damages for Physical Injury*

Finally, FFPO seeks dismissal of Lynch's request for "damages for physical pain and suffering and medical costs." FFPO argues that Title VII does not provide for damages in the case of a physical injury.[176] In opposition, Lynch contends that her claim for damages arising out of her altercation with Davenport does not arise solely under Title VII but instead, that Lynch may have non-Title VII claims, such as vicarious liability, that provide for such damages.[177] Lynch further claims that to the extent she does request damages for claims arising under Title VII, Title VII provides for damages for physical injuries, and argues that such damages are necessary to "make whole" litigants suing under the statute.[178]

Originally, the "primary form of monetary relief available [under Title VII] was backpay."[179] In 1991, Section 1981a was enacted into law, expanding the remedies available to a Title VII plaintiff.[180] In addition to the existing backpay remedies, Section 1981a provided a means

---

[174] *Price*, 459 F.3d at 598 (citing 42 U.S.C. § 2000e, *et seq.*).

[175] Rec. Doc. 172-4 at 24, 33–34.

[176] Rec. Doc. 172-1 at 21.

[177] Rec. Doc. 188 at 1–2.

[178] *Id.* at 4–7.

[179] *Landgraf v. USI Film Prod.*, 511 U.S. 244, 252 (1994).

[180] *Id.* at 252.

for plaintiffs to seek compensatory and punitive damages. Specifically, Section 1981a(b)(3) lists the following possible bases for compensatory damages: future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.[181] The statute does not mention damages for physical injuries.

While it appears the issue of whether Section 1981a includes personal injury damages has not yet been answered by the Fifth Circuit, other courts have held that no such damages are available.[182] In making this determination, courts have noted that it would "defy conventional canons of statutory construction to read in such an expansive definition of liability" and "where Congress has expressed its intentions in clear and plain language, courts will not disturb the statutory language."[183]

This Court agrees. Lynch's argument that physical injury damages are necessary to make her whole appears to be unavailing. "Under the 'make whole' remedial theory, a court's first task is to determine the injuries caused by discrimination that require judicial relief. In other words, the court must ascertain in what way the plaintiff is not 'whole.'"[184] The Fifth Circuit has noted that "in the vast majority of employment discrimination cases, the asserted injury is an adverse employment decision,"[185] and the Supreme Court has labeled backpay as a "make-whole" remedy

---

[181] *Id.*

[182] *Aponik v. Verizon Pa. Inc.*, 106 F. Supp. 3d 619, 623 (E.D. Pa. 2015); *Tammy v. Carnival Cruise Lines*, No. CV134716JLLJAD, 2015 WL 7069654, at *10 (D.N.J. Nov. 13, 2015).

[183] *Tammy*, 2015 WL 7069654, at *10.

[184] *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 560 (5th Cir. 1998).

[185] *Id.*

within the general context of a Title VII claim.[186] Lynch has failed to point to any physical injuries she alleges she suffered pursuant to a Title VII claim against FFPO for which physical injury damages would be required to make her whole.[187] Thus, the Court dismisses Plaintiff's request for physical injury damages under Title VII.

### V. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that FFPO's "Motion for Partial Summary Judgment Seeking Dismissal of Certain Claims of Plaintiff Barbara Lynch"[188] is **GRANTED**. Lynch's claim for wrongful termination under Title VII, her claim for age discrimination under the ADEA, and her request for damages for physical injury under Title VII are hereby **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA,** this 23rd day of September, 2021.

_Nannette Jolivette Brown_

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[186] *Landgraf*, 511 U.S. at 253.

[187] Lynch also cites to *Myree v. Loc. 41, Int'l Bhd. of Elec. Workers*, No. 85-1427S, 1993 WL 455294, at *2 (W.D.N.Y. July 9, 1993). Rec. Doc. 211. In *Myree*, the district court held that the plaintiff was entitled to an award of $25,000 after being discriminated against 18 years prior to the case, at which time the plaintiff was denied union membership. *Id.* The court's award was based on the fact that the plaintiff was not entitled to back pay and because the court found that awarding the plaintiff union membership 18 years after the discrimination was "worthless as a practical matter." *Id.* at *7. The holding in *Myree* is of course not binding on this Court. Moreover, *Myree* is distinguishable from this case, as the plaintiff in *Myree* was not seeking physical injury damages. Furthermore, unlike the plaintiff in *Myree*, it remains true that Lynch has failed to show that physical injury damages are necessary to make her "whole" for any claim she brings against FFPO pursuant to Title VII.

[188] Rec. Doc. 172.