**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BARBARA LYNCH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-13200** |
| **FLUOR FEDERAL PETROLEUM OPERATIONS, LLC, et al.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Plaintiff Barbara Lynch ("Lynch") filed this lawsuit against her employer and co-workers arising out of alleged harassment and discrimination that she faced during her employment with Defendant Fluor Federal Petroleum Operations, LLC ("FFPO"). Before the Court is FFPO's "Motion for Summary Judgment Dismissing All Remaining Claims of Plaintiff, Barbara Lynch."[1] In the motion, FFPO seeks dismissal of the following: (i) Lynch's claims for sexual harassment and age harassment, (ii) Lynch's claim for race discrimination, (iii) Lynch's claim for retaliation, and (iv) Lynch's claim that FFPO is vicariously liable for the alleged battery by Stacie Davenport. Lynch opposes the motion in part, but she concedes to the dismissal of her claims for race discrimination and age harassment.[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies it in part.

---

[1] Rec. Doc. 248.

[2] Rec. Doc. 268.

1

## I. Background

On October 18, 2019, Lynch filed a complaint in this Court naming as Defendants FFPO, Lynch's co-worker Stacie Davenport ("Davenport"), and Scott Sclafani ("Sclafani") (collectively, "Defendants").[3] On October 26, 2019, Lynch filed an amended complaint (the "Amended Complaint") against Defendants.[4] In the Amended Complaint, Lynch alleges that she is a 49-year-old African American female who was employed by FFPO as a Procurement Contract Technician.[5] Lynch alleges that her employment was terminated on July 31, 2019 for violations of the FFPO Workplace Violence Prevention Procedure and Code of Business Conduct and Ethics ("Workplace Violence Policy").[6]

In the Amended Complaint, Lynch brings claims against FFPO for sexual harassment ("Count 1") and against Sclafani for battery ("Count 2").[7] Lynch alleges that "around her fifth week at work, Sclafani began to appear in her work area unnecessarily about 1-2 times/week."[8] Lynch asserts that Sclafani would attempt to engage her in non-work related conversation, stand uncomfortably close to her, and sometimes touch her shoulder.[9] On February 21, 2019, Lynch alleges that Sclafani trapped her in a co-worker's cubicle and forcibly massaged her shoulder.[10]

---

[3] Rec. Doc. 1.

[4] Rec. Doc. 6.

[5] *Id.* at 1.

[6] *Id.* at 2.

[7] *Id.* at 4–5.

[8] *Id.* at 4.

[9] *Id.*

[10] *Id.*

Lynch asserts that Sclafani blocked the cubicle doorway by extending his arms across it, forcing her to duck under his arm to leave.[11] Lynch contends that FFPO "had notice of Sclafani's having previously sexually harassed two co-workers."[12]

Lynch also brings a claim against FFPO for race discrimination ("Count 3").[13] Lynch alleges that another co-worker, Angela Keller, displayed racial animus to Lynch by excluding Lynch from work functions, reducing her workload, and excluding her from performing certain work.[14] Lynch alleges that on December 6, 2018, Ms. Keller called Lynch a "n***er."[15] Lynch also alleges that on July 22, 2019, Sclafani called her a "black b***h."[16]

Further, Lynch brings claims against FFPO, Sclafani, and Davenport for "retaliatory harassment" and "age harassment" ("Count 4").[17] Lynch alleges that she was subjected to "retaliatory harassment" by her co-workers after making complaints to supervisors.[18] For example, Lynch claims that on February 22, 2019, she informed her supervisor, Jorge Perez ("Perez"), of Sclafani's conduct that had occurred the day before.[19] From this point forward, Lynch alleges that Sclafani, Davenport, and the rest of her work group began to treat Lynch differently.[20] Lynch

---

[11] *Id.* at 4–5.

[12] *Id.* at 5.

[13] *Id.* at 5–12.

[14] *Id.*

[15] *Id.* at 8.

[16] *Id.*

[17] *Id.* at 12–20.

[18] *Id.*

[19] *Id.* at 12.

[20] *Id.* at 13.

alleges that when co-workers saw her "in the hallway they would grab the walls and press themselves against the walls."[21] According to the Amended Complaint, on March 14, 2019, Sclafani passed by Lynch's cubicle and warned Lynch, "You cannot hide from me. You better be scared of me. You can't run from me."[22] On March 16, 2019, Lynch claims she submitted a written complaint to Ginger Roques ("Roques"), a manager in Human Resources, about Sclafani and Davenport.[23] Lynch asserts that thereafter she was moved to a cubical further away from Sclafani.[24] Lynch alleges that on May 14, 2019, Perez told Lynch directly: "I think the group is not ready for someone who looks like you and me. I think that's why you are being mistreated."[25] Lynch claims that she again spoke to Roques about Sclafani and Davenport on May 20, 2019.[26]

Lynch also claims that she was subject to "age harassment."[27] Lynch asserts that on March 21, 2019, she "found a photograph of an old gray-haired lady on her desk."[28] Lynch alleges that a similar photograph was left in or near her cubicle on several occasions.[29] Additionally, Lynch alleges that she later found a soiled bandage on the floor in her cubicle.[30] Lynch states that she

---

[21] *Id.* at 14.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 15.

[25] *Id.*

[26] *Id.*

[27] *Id.* at 17.

[28] *Id.*

[29] *Id.*

[30] *Id.*

"interpreted this as a suggestion that she was unclean and a threat that she might be injured and need a bandage."[31]

Lynch alleges that she complained to her superiors at FFPO about the harassment by Sclafani and Davenport on several occasions.[32] According to the Amended Complaint, "[a]fter each complaint the known harassment by Sclafani and Ms. Davenport remained about the same, but the general office mistreatment would get worse."[33]

Lynch alleges that on July 30, 2019, she and Davenport got into a verbal altercation.[34] During the incident, Lynch alleges that "Davenport rushed back to Lynch's cubicle, pushed her twice on the chin, grabbed her by the neck and hair and threw Lynch on her left side to the floor where she proceeded to mash her face with the palm of her hand and to scratch at her face with her fingertips (which lacked nails)."[35] Lynch claims that she "continues to feel pain in some of those areas."[36] Lynch alleges that this conduct by Davenport constituted a battery ("Count 5").[37]

Lynch alleges that her employment was terminated on July 31, 2019, for violations of FFPO's Workplace Violence Policy.[38] Lynch contends that her termination was caused by FFPO's "failure to take effective remedial action against the retaliatory harassment which culminated in

---

[31] *Id.*

[32] *Id.* at 19.

[33] *Id.*

[34] *Id.* at 18–19.

[35] *Id.* at 19.

[36] *Id.*

[37] *Id.* at 19–20. The alleged battery is incorrectly labeled Count 4 in the Amended Complaint.

[38] *Id.* at 20.

the attack by Ms. Davenport making the termination a product of the harassment and therefore wrongful."[39] Therefore, Lynch brings a claim against FFPO for "wrongful termination" ("Count 6").[40] In sum, the Amended Complaint asserts the following claims against FFPO: (i) sexual harassment; (ii) race discrimination; (iii) age harassment and retaliation; and (iv) wrongful termination. Although not explicit in the Amended Complaint, in other pleadings before this Court Lynch has also argued that FFPO is vicariously liable for Davenport's alleged attack.[41]

On September 24, 2021, the Court granted partial summary judgment for FFPO, dismissing Lynch's claims for wrongful termination under Title VII, her claim for age discrimination under the ADEA, and her request for damages for physical injury under Title VII.[42] That same day, the Court denied FFPO's motion for judgment on the pleadings as to Lynch's claim under the LEDL and her claim for vicarious liability because the parties did not brief whether the factual allegations in the Amended Complaint stated a claim under either theory.[43] On November 23, 2021, the Court granted partial summary judgment for FFPO dismissing Lynch's claim for wrongful termination under the LEDL.[44] On November 2, 2021, FFPO filed the instant motion for summary judgment, seeking dismissal of all of Lynch's remaining claims.[45] On November, 23, 2021, Lynch filed an

---

[39] *Id.*

[40] *Id.* The alleged wrongful termination is incorrectly labeled Count 5 in the Amended Complaint.

[41] Rec. Docs 188, 207.

[42] Rec. Doc. 213.

[43] Rec. Doc. 214.

[44] Rec. Doc. 267.

[45] Rec. Doc. 248

opposition to the instant motion.[46] On December 14, 2021, with leave of Court, FFPO filed a reply.[47]

## II. Parties' Arguments

### A.    *FFPO's Arguments in Support of the Motion*

FFPO argues that it is entitled to summary judgment on the following claims: (i) Lynch's claims for sexual harassment, (ii) Lynch's claim for retaliation, and (iii) Lynch's claim that FFPO is vicariously liable for the alleged battery by Stacie Davenport.[48] FFPO also seeks summary judgment on Lynch's age harassment and race discrimination claims. However, because Lynch concedes that those claims should be dismissed, the Court does not recap those arguments.[49]

### 1.    Sexual Harassment Claim

FFPO contends that Lynch's sexual harassment claim based on Sclafani's conduct should be dismissed because: (1) Sclafani's conduct was not directed at Lynch because of her sex; (2) Sclafani's conduct was not severe or pervasive; (3) Sclafani's act did not affect a term or condition of Lynch's employment; and (4) FFPO took prompt and effective remedial action in response to Lynch's complaint.[50]

FFPO contends that Lynch asserts only a single claim of sexual harassment, arising out of an incident where Sclafani put his hand on Lynch's shoulder on February 21, 2019.[51] FFPO argues

---

[46] Rec. Doc. 268.

[47] Rec. Doc. 293.

[48] Rec. Doc. 248.

[49] Rec. Doc. 268 at 1, 25.

[50] Rec. Doc. 248–1 at 3.

[51] *Id.* at 4.

that because Lynch does not assert that Sclafani was her supervisor, Lynch's claim is one for a hostile work environment.[52] First, FFPO argues that it is entitled to summary judgment on this claim because Lynch has "no evidence this act was directed at her because of her sex."[53] FFPO also argues that Sclafani touching Lynch's shoulder on one occasion is not sufficiently "severe or pervasive" to create an objectively hostile work environment.[54] FFPO further argues that "[i]solated incidents like Sclafani's shoulder touching" are insufficient to support a hostile work environment unless they are "extremely serious."[55] FFPO cites several cases where the Fifth Circuit held that the conduct at issue was insufficient to establish a hostile work environment, and claims that those cases were more severe than the single instance of Sclafani touching Lynch's shoulder.[56] Thus, FFPO argues that Sclafani's conduct does not rise to the level of "extremely serious" conduct that is sufficient to establish a hostile work environment.[57]

Alternatively, FFPO argues that Lynch's sexual harassment claim is barred by the *Faragher/Ellerth* affirmative defense because FFPO took "reasonable care to prevent and promptly correct the alleged harassment."[58] FFPO points out that it has policies prohibiting harassment and instructing employees to report any incidents of harassment.[59] FFPO contends that

---

[52] *Id.* at 5.

[53] *Id.* at 4.

[54] *Id* at 6.

[55] *Id.*

[56] *Id.* at 8.

[57] *Id.*

[58] *Id.* at 10.

[59] *Id.*

after Lynch reported Sclafani's conduct, Roques initiated an investigation where she interviewed Sclafani and several of Lynch's coworkers.[60] As a result, FFPO contends that Sclafani received a disciplinary write-up known as a "Corrective Action Memorandum."[61] FFPO argues that Lynch's dissatisfaction with FFPO's form of discipline is not sufficient to defeat summary judgment.[62]

### 2.    Retaliation Claim

FFPO contends that it is entitled to summary judgment on Lynch's retaliation claim. FFPO contends that Title VII requires Lynch to show that she (1) engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action.[63] FFPO contends that Lynch cannot do so for several reasons.

First, FFPO argues that Lynch's "protected activity" was not made in good faith and thus Lynch cannot establish a claim for retaliation.[64] FFPO contends that Lynch's only protected activity was her March 16, 2019 complaint, alleging race and sex discrimination.[65] FFPO further contends that this complaint came seven weeks after FFPO had already disciplined Keller, and that Lynch only "retroactively referred to the incident with Keller as 'apparent racial discrimination' when her lawyer . . . helped Lynch write a replacement statement."[66] Similarly, FFPO contends

---

[60] *Id.* at 11.

[61] *Id.*

[62] *Id.*

[63] *Id.* at 13.

[64] *Id.* at 14.

[65] *Id*.

[66] *Id.*

that Lynch "never accused Sclafani of 'sexual harassment' in her initial statement about the 'touching incident' until she later submitted the same revised, lawyer-aided statement *after* FFPO had already disciplined Sclafani."[67] Because these "legal 'buzz words' . . . were never mentioned at all by Lynch until her lawyer inserted them" into Lynch's March 26, 2019 statement, FFPO contends that Lynch's alleged protected activity was not made in good faith.[68] FFPO contends that Lynch was attempting to "set FFPO up" for a retaliation claim.[69] Accordingly, FFPO contends that it is entitled to summary judgment on the retaliation claim.

Second, FFPO contends that the retaliatory acts alleged by Lynch are not protected by any relevant retaliation statutes.[70] FFPO argues that it "has found no case law to support a claim that a physical fight is the type of retaliatory act that is protected by the statutes."[71] Furthermore, FFPO argues that some of the alleged incidents of harassment, such as leaving a bandage on the floor near Lynch's workstation, are "so petty as to be beyond any statutory protections."[72]

Next, FFPO contends that Lynch cannot establish a prima facie case of retaliation because she cannot show causation.[73] FFPO argues that Lynch must show a "causal link between the act and her protected activity."[74] FFPO contends that because the attack did not occur until 4.5 months

---

[67] *Id.* (emphasis in original).

[68] *Id.* at 15.

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] Rec. Doc. 248–1 at 17.

[74] *Id.*

after Lynch made her complaints, temporal proximity between the protected conduct and the retaliation alone is not sufficient to show causation.[75] FFPO argues that Lynch must provide additional evidence beyond temporal proximity to show a causal link, and contends that Lynch has not done so.[76]

FFPO further argues that it is entitled to summary judgment because Lynch cannot show that the alleged act of retaliation was done in response to Lynch's protected activity. FFPO argues that Lynch has no evidence that Davenport attacked her in retaliation for making a complaint against Keller of Sclafani.[77] FFPO points out that there is no evidence that Davenport even knew Lynch accused Keller of race discrimination.[78]

### 3.   Vicarious Liability Claim

Lastly, FFPO urges the Court to "re-consider its decision about whether Lynch has stated a claim that FFPO should be held vicariously liable for Davenport's alleged battery against Lynch," citing the Court's September 24, 2021 Order denying FFPO's Motion for Judgment on the Pleadings.[79] FFPO quotes at length from the Court's December 28, 2021 Order regarding FFPO's motion to dismiss Davenport's vicarious liability claim, and argues that Lynch has similarly failed to plead the facts necessary to state a claim for vicarious liability.[80] Thus, FFPO

---

[75] *Id.* at 18.

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.* at 21.

[80] *Id.*

urges the Court to reconsider its decision under Rule 59 and/or Rule 60.[81] Alternatively, FFPO alleges that it is entitled to summary judgment on Lynch's vicarious liability claim.[82] FFPO argues that Lynch has failed to present evidence that Davenport's actions were within the course and scope of her employment, and argues that Davenport's actions were not "employment rooted."[83]

**B.    *Lynch's Arguments in Opposition to the Motion***

Lynch opposes the motion in part, but she concedes to the dismissal of her claims for race discrimination and age harassment.[84] Lynch opposes the motion to the extent it seeks dismissal of her sexual harassment, retaliation, and vicarious liability claims.

### 1.    Sexual Harassment Claim

Lynch argues that FFPO is not entitled to summary judgment on the sexual harassment claim. First, Lynch argues that her sexual harassment claim is not based on the single touching incident, but on "months of sexual harassment."[85] Nevertheless, Lynch argues that Sclafani's act of "forcibly grabb[ing] her shoulder" and "pinn[ing] her to the cubical such that it took her three tries to get out" is an "extremely serious" isolated incident that is actionable.[86] Lynch further argues that Sclafani's act "discriminatorily altered" a condition of Lynch's employment, as Lynch requested that her cubicle be moved away from Sclafani's as a result of the incident.[87]

---

[81] *Id.*

[82] *Id.* at 22.

[83] *Id.* at 23–24.

[84] Rec. Doc. 268 at 1, 25.

[85] *Id.* at 5.

[86] *Id.* at 8.

[87] *Id.*

Next, Lynch argues that her claim is not barred by the *Faragher/Ellertth* Defense.[88] Lynch appears to argue that FFPO's remedial actions were insufficient to end the harassment because Sclafani "embarked on a sustained campaign of a different kind of behavior—retaliation that included farts at her cube and a physical threat."[89] Lynch argues that because the harassment continued, FFPO's actions were not "reasonably calculated to stop the harassment" and thus her claim is not barred by the *Faragher/Ellertth* Defense.[90]

### 2.    Retaliation Claim

Lynch argues that she suffered retaliation for making a complaint about Sclafani. Lynch contends her complaint about Sclafani to Ginger Roques is "protected conduct."[91] Furthermore, in response to that complaint, Lynch argues that she was retaliated against. First, she contends that the alleged attack by Davenport was retaliatory.[92] Lynch contends that Davenport "shared Sclafani's retaliatory animus" toward Lynch and that, based on "this showing of motivation, there is no reason a physical attack cannot be retaliatory."[93] Lynch also argues that she was retaliated against through a "multitude of other harassing incidents."[94] Specifically, Lynch contends that the following actions were retaliatory: (1) Sclafani telling Lynch that she can't hide from him; (2) Davenport ignoring Lynch's requests for information; (3) Jeanne DeLasalle mocking Lynch; (4)

---

[88] *Id.* at 9.

[89] *Id.*

[90] *Id.* at 11.

[91] *Id.* at 12.

[92] *Id.*

[93] *Id.*

[94] *Id.*

Anthony Donfronio leaving a used bandage on the floor of Lynch's cubicle; (5) somebody leaving a photograph of a grey-haired lady in her cubicle; (6) Nadine Anthony "singl[ing] out plaintiff for abuse at a printer"; (7) coworkers "flatten[ing] themselves against the corridor walls in a show of avoiding her."[95] Lynch argues that these incidents must be viewed in the aggregate, and thus do not fall into the category of "petty slights" which cannot be the basis for a retaliation claim.[96]

### 3.    Vicarious Liability Claim

Lynch contends that she is entitled to recover damages because FFPO is vicariously liable for Davenport's battery.[97] Lynch argues that the Court should not reconsider its prior order where it denied FFPO's motion for judgment on the pleadings as to Lynch's vicarious liability claim.[98] Lynch contends that because in that motion FFPO only argued that Lynch had not sufficiently alleged any particular legal theory, FFPO cannot now argue that Lynch has failed to plead facts sufficient to establish vicarious liability.[99] Lynch contends that because this argument was available to FFPO when it moved for judgment on the pleadings, but FFPO failed to make it, the Court should not now consider this argument.[100] Furthermore, Lynch argues that FFPO's alternative theory that Lynch has failed to present any evidence to establish vicarious liability

---

[95] *Id.* at 22–23.

[96] *Id.* at 14.

[97] *Id.* at 24.

[98] *Id.*

[99] *Id.* at 26.

[100] *Id.*

should be rejected. Lynch argues that this is "a variant of the first argument and should be rejected for the same reasons."[101]

## C.   *FFPO's Arguments in Further Support of the Motion*

In further support of the motion, FFPO first argues that Lynch has conceded that her age-based harassment and race discrimination claims should be dismissed, and thus summary judgment should be granted as to those claims.[102]

FFPO contends that the motion should be granted because Lynch has not filed sufficient evidence into the record to defeat the motion.[103] FFPO argues that the only evidence that Lynch has filed are two deposition excerpts and her "own self-serving declaration."[104] FFPO contends that, without more, such affidavits are not sufficient to defeat summary judgment.[105] FFPO thus argues that Lynch's failure to "come forth with sufficient evidence to support her claims is enough reasons, in and of itself," for the Court to grant summary judgment.[106]

Furthermore, FFPO re-urges that it is entitled to summary judgment on Lynch's retaliation claim. FFPO argues that Lynch has no evidence that demonstrates that the harassment from her coworkers was done in retaliation for her complaints about Sclafani.[107] FFPO contends that most of these incidents involved employees who "have not been given any reason whatsoever to retaliate

---

[101] *Id.* at 27.

[102] Rec. Doc. 293 at 1.

[103] *Id.* at 2.

[104] *Id.*

[105] *Id.* at 3.

[106] *Id.*

[107] *Id.* at 6.

against Lynch."[108] Furthermore, FFPO argues that Lynch has offered no evidence to suggest that this harassment would not have occurred absent her alleged act of protect activity.[109]

As to Lynch's vicarious liability claim, FFPO argues that it is entitled to summary judgment because Lynch has put forth no evidence that Davenport's alleged attack was "primarily employment rooted."[110] FFPO argues that Lynch's speculation that Davenport attacked her in retaliation for Lynch's complaint against Sclafani is "wholly without any evidentiary basis whatsoever."[111]

### D.    *Lynch's Arguments in Further Opposition to the Motion*

In her sur-reply, Lynch argues that the harassment from her coworkers was motivated by retaliation.[112] She contends that much of the harassment came from Davenport, Nadine Anthony, and Sclafani, who all had "retaliatory animus."[113] She notes that Davenport and Anthony both told her that she "should pay for" having reported Sclafani.[114] Lynch further argues that animus can be imputed to the coworkers involved in the other incidents.[115]

---

[108] *Id.*

[109] *Id.*

[110] *Id.* at 4.

[111] *Id.*

[112] Rec. Doc. 305 at 3.

[113] *Id.*

[114] *Id.*

[115] *Id.* at 4.

Lastly, Lynch argues that the vicarious liability claim is not before the Court. Lynch contends that the claim is not properly at issue because the Court already denied FFPO's motion for judgment on the pleadings on this issue.[116]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[117] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[118] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[119] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[120] The nonmoving party may not rest upon the pleadings.[121] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[122]

---

[116] *Id.* at 2.

[117] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[118] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[119] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[120] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[121] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[122] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[123] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[124] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[125] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[126]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[127] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[128] Hearsay

---

[123] *Celotex*, 477 U.S. at 323.

[124] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[125] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[126] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[127] *Little*, 37 F.3d at 1075 (internal citations omitted).

[128] *Morris*, 144 F.3d at 380.

evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[129]

## IV. Analysis[130]

Before turning to the disputed claims, the Court notes that in opposition to the instant motion, Lynch concedes that her claims for race discrimination and harassment based on age should be dismissed.[131] Therefore, FFPO is entitled to summary judgment on those claims.

FFPO also argues that it is entitled to summary judgment on the following: (i) Lynch's claims for sexual harassment, (ii) Lynch's claim for retaliation, and (iii) Lynch's claim that FFPO is vicariously liable for the alleged battery by Stacie Davenport. The Court will address each claim in turn.

### A.    *Sexual Harassment Claim*

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex."[132] To succeed on a hostile work environment sexual harassment claim under Title VII, the plaintiff must establish that:

> (1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a term, condition, or privilege of employment and (5) the employer knew or should have known of the harassment and failed to

---

[129] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[130] The Court notes that in addition to the arguments on the merits, FFPO argues that Lynch's opposition should be disregarded for various reasons. Rec. Doc. 293 at 1–2. This Court considered and rejected those arguments when it denied FFPO's motions for entry of default and for default judgment. Rec. Doc. 298.

[131] Rec. Doc. 268 at 1, 25.

[132] 42 U.S.C. § 2000e-2(a)(1).

take prompt remedial action.[133]

To satisfy the fourth element, the harassment "must be sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'"[134] In determining whether the conduct is sufficiently "severe or pervasive," the Court must look to all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[135] The Supreme Court has noted that a "recurring point" in its Title VII decisions is that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[136] The Fifth Circuit has elaborated on this principle, explaining as follows:

> An egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment. The inverse is also true: Frequent incidents of harassment, though not severe, can reach the level of pervasive, thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists. Thus, the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.[137]

FFPO argues that Sclafani's conduct was not sufficiently "severe or pervasive" to establish a hostile work environment. Lynch, on the other hand argues that this is the kind of "extremely serious" single incident that the Supreme Court contemplated in *Faragher*. Lynch argues that Sclafani "forcibly grabbed her shoulder, and pinned her [to] the cubicle such that it took her three

---

[133] *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996).

[134] *Lauderdale v. Texas Dept of Criminal Just.*, 512 F.3d 157, 163 (5th Cir. 2007).

[135] *Harris v. Forklift Sys. Inc*., 510 U.S. 17, 23 (1993).

[136] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotations omitted).

[137] *Lauderdale*, 512 F.3d at 163.

tries to get out."[138] Furthermore, Lynch contends that Sclafani "trapping" her in the cubicle is an "aggravating factor because it adds an element of enhanced physical threat."[139] Lynch also emphasizes that Sclafani is a "big man" as he is six feet and one inch tall, and weighs 260 pounds.[140] Lynch also argues that being grabbed by Sclafani was humiliating. For these reasons, Lynch argues that Sclafani's conduct was sufficiently severe to establish a hostile work environment.[141]

The Fifth Circuit, however, has rejected hostile work environment claims that involved circumstances that appear far more severe than those at issue here. In *Paul v. Northrop Grumman*, the Fifth Circuit described the plaintiff's hostile work environment claim as follows:

> Paul alleges that, on that day, Barattini walked up to her until his chest was touching hers, thus "chesting up" to her breasts in a thirty-second confrontation. As Paul attempted to separate herself, he stared at her in a hostile and intimidating manner. Paul then walked away toward a narrow ship passageway, but Barattini followed her. He forced his way through the door ahead of her, and, in doing so, placed his hand on her stomach and ran his arm around her waist. As he squeezed past her in the passageway, he allegedly "rubbed his pelvic region across [her] hips and buttocks." According to Paul, the incident lasted a total of approximately a minute and a half, and occurred in the presence of another supervisor who did not intervene.[142]

Nevertheless, the Fifth Circuit affirmed the district court's grant of summary judgment for the employer, explaining that the conduct did not "rise to a sufficient level of severity."[143] Similarly,

---

[138] Rec. Doc. 268 at 5.

[139] *Id.* at 6–7.

[140] *Id.* at 6.

[141] *Id.* at 5.

[142] *Paul v. Northrop Grumman Ship Systems*, 309 Fed. App'x 825, 826 (5th Cir. 2009).

[143] *Id.* at 829.

in *Gibson v. Potter*, the plaintiff's supervisor "grabbed her on the buttocks and made suggestive comments while she conversed with another employee."[144] The Fifth Circuit again affirmed the district court's grant of summary judgment for the employer, concluding that "a reasonable jury would not find that [the plaintiff's] conduct was sufficiently severe or pervasive."[145]

Here, Lynch testified that Sclafani "forcibly plopped his hands on [her] shoulder, dug into [her] shoulder really hard and then massaged [her] shoulder" for a few seconds.[146] This is not the type of "extremely serious" single incident that the Supreme Court contemplated in *Faragher*. Sclafani's alleged conduct here, though inappropriate, is clearly less severe than the conduct in *Paul*, *Gibson*, and *Hockman*, and therefore is not sufficient to establish a hostile work environment under Fifth Circuit precedent.[147]

Lynch appears to argue, at various points in her briefing, that her hostile work environment claim is not based on the single incident with Sclafani. Instead, she asserts that the incident with Sclafani was "itself the culmination of a month of sexual harassment with complaints by [Lynch]

---

[144] *Gibson v. Potter*, 264 Fed. App'x 397, 398 (5th Cir. 2008).

[145] *Id; see also Hockman v. Westward Commc'ns* LLC 407 F.3d 317, 329 (5th Cir. 2004) (finding no hostile work environment where an employee: (1) made a remark to the plaintiff about another employee's body; (2) slapped the plaintiff on the behind with a newspaper; (3) grabbed/brushed against the plaintiff's breasts and behind; (4) held the plaintiff's cheeks and tried to kiss her; (5) asked the plaintiff to come to work early so that they could be alone; and (6) stood in the door of the bathroom while she was washing her hands).

[146] Rec. Doc. 248–5 at 21.

[147] Lynch appears to argue that the incident was particularly severe because Sclafani "trapped" her in the cubicle. Lynch cites a district court from the district of Nebraska where another employee rubbed the plaintiff's thighs, pressed his arm into her breast, and grabbed her "in the crotch area" while "inside a vehicle from which there was no escape." *Barrett v. Omaha Nat. Bank*, 584 F. Supp. 22, (D, Neb. 1983). That case is far afield from the circumstances here, where Sclafani stood in front of the entranceway to Lynch's cubicle. Indeed, the circumstances are much closer to the other case Lynch cites, *Chavers v Shinseki*, 667 F. Supp.2d 116 (D.D.C. 2009), which held that there was no hostile work environment where a co-worker "blocked plaintiff's exit path from a classroom with a steel cart."

and no action by Perez."[148] She asserts that "Sclafani had been entering [Lynch's] cubicle for a month, standing close to her as she sat in her chair, and placing his genitals close to the back or side of her head."[149] Furthermore, Lynch alleges that Sclafani "made sexual remarks about hoping there was a sex room in the new building and told sexual jokes in the LE2 work space."[150] The only summary judgment evidence that Lynch puts forth to support these allegations is her own affidavit.[151] As this Court explained in its September 24, 2021 Order and Reasons in this case, "the caselaw surrounding the applicability of so-called self-serving affidavits is unclear in this Circuit."[152] However, even if Lynch's affidavit alone is sufficient summary judgment evidence, it does not demonstrate that the harassment was pervasive.

The Fifth Circuit has explained that "a regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII."[153] Severity and pervasiveness are "to a certain degree, inversely related; a sufficiently severe episode may occur as rarely as once, while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute."[154]  However, Lynch does not offer any evidence of the frequency of the conduct alleged in the affidavit. The affidavit suggests that this conduct occurred for, at most, one month, and does not indicate how many times within that month this

---

[148] Rec. Doc. 268 at 2.

[149] *Id.* at 4.

[150] *Id.* at 4–5.

[151] Rec. Doc. 268–3.

[152] Rec. Doc. 213 at 20, n. 140.

[153] *EEOC v. WC&M Enter., Inc*, 496 F.3d 393, 400 (5th Cir 2007)

[154] *Cerros v. Steel Techs., Inc*., 288 F.3d 1040, 1047 (7th Cir. 2002)

conduct occurred. Thus, Lynch's affidavit, even if considered competent summary judgment evidence, is not sufficient to create a dispute of fact as to the pervasiveness of the harassment.[155]

## B.   *Retaliation Claim*

Title VII of the Civil Rights Act of 1964 provides that "[it] shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[156] Thus, in addition to prohibiting discrimination based on race, color, religion, sex, and national origin, Title VII also prohibits "retaliation against an employee who has opposed discrimination or has been involved in a discrimination claim."[157]

Retaliation claims are governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*.[158] Under this framework, a plaintiff must first establish a prima facie case of retaliation by establishing that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action.[159] If the

---

[155] *West v. City of Hous.*, 960 F.3d 736, 742 (5th Cir. 2020) (finding that plaintiff could not show the harassment was pervasive where she "provides no evidence of the[] frequency" of the conduct); *Hockman*, 407 F.3d at 328 (finding that the conduct was not pervasive where the plaintiff "did not even estimate how many times [the] conduct occurred.")

[156] 42 U.S.C. § 2000e-3

[157] *Smith v. Xerox Corp.*, 584 F. Supp. 2d 905, 907 (N.D. Tex. 2008), *aff'd*, 602 F.3d 320 (5th Cir. 2010) (internal citations omitted).

[158] *Brown v. Wal-Mart Stores E., L.P*, 969 F.3d 571, 577 (5th Cir. 2020); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[159] *Brown*, 969 F.3d at 577 (citing *Byers v. Dall. Morning News, Inc*., 209 F.3d 419, 425 (5th Cir 2000)).

plaintiff can establish a prima facie case of retaliation, the burden will shift to the defendant to articulate a legitimate, nondiscriminatory reason for an adverse employment action.[160] If the defendant can do so, the burden shifts back to the plaintiff to show that any nondiscriminatory or legitimate purposes offered by the defendant are merely a pretext for discrimination or retaliation.[161]

The Court begins its analysis by noting that, at this stage, Lynch's retaliation claim does not involve FFPO's termination of her employment. In the Court's September 24, 2021 Order and Reasons granting FFPO's partial motion for summary judgment, the Court ruled that the termination of Lynch's employment was not retaliatory because FFPO had a legitimate, non-discriminatory reason for terminating her employment, and Lynch did not establish that this reason was pretextual.[162] Thus, the Court granted summary judgment for FFPO on Lynch's wrongful termination claim.[163] Now, Lynch argues that she suffered retaliation for reporting Sclafani's conduct, and points to Davenport's attack and  harassment by other coworkers as evidence of the alleged retaliation.

As discussed above, to establish a prima facie case of retaliation, a plaintiff must establish that her employer took an adverse employment action against her.[164] However, the Court has already rejected Lynch's claim that FFPO retaliated against her by terminating her employment. Lynch now argues that she experienced "retaliatory harassment" when Davenport attacked her and

---

[160] *Id.* (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)).

[161] *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

[162] Rec. Doc. 213.

[163] *Id.*

[164] *Brown*, 969 F.3d at 577

other coworkers harassed her. Specifically, Lynch argues that she experienced the following incidents of "retaliatory harassment" after she made complaints about Sclafani: (1) Sclafani telling Lynch that she can't hide from him; (2) Davenport ignoring Lynch's requests for information; (3) Jeanne DeLasalle mocking Lynch; (4) Anthony Donfronio leaving a used bandage on the floor of Lynch's cubicle; (5) somebody leaving a photograph of a grey-haired lady in her cubicle; (6) Nadine Anthony "singl[ing] out [Lynch] for abuse at a printer"; (7) coworkers "flatten[ing] themselves against the corridor walls in a show of avoiding her."[165] Thus, Lynch's retaliatory harassment claim is not based on an adverse employment action taken against her by her employer, but rather the assault by Davenport and harassment by coworkers.

Although some circuits interpret Title VII broadly to permit claims for coworker retaliation,[166] the Fifth Circuit takes a narrow approach. The Fifth Circuit has explained that an "adverse employment action," for purposes of the antiretaliation provision of Title VII, is one that "a reasonable employee would have found … [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[167] However, "any alleged retaliation must be by the employer."[168] "The actions of ordinary employees are not imputable to their employer unless they are conducted 'in furtherance of the employer's business.'"[169] Even then, however, "petty slights, minor annoyances,

---

[165] Rec. Doc. 268 at 22–23.

[166] *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 346-47 (5th Cir. 2008).

[167] *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (alteration in original).

[168] *Spencer v. Schmidt Elec. Co*. 576 Fed. App'x 442 (5th Cir. 2014) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 306 (5th Cir. 1996)).

[169] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012).

and simple lack of good manners" are not sufficient to establish an adverse employment action.[170]

In *Hernandez v. Yellow Transportation, Inc*, for example, the plaintiff brought a retaliation claim against his employer.[171] It was undisputed that the plaintiff had engaged in protected activity by picketing against the employer's treatment of minorities.[172] However, the Fifth Circuit affirmed the district court's grant of summary judgment for the employer.[173] The appellate court explained that although the plaintiff "advances various incidents of coworker harassment, including name-calling, physical intimidation, false accusations, vandalization of his belongings, verbal threats, and observing violence and illegal behavior," none of these incidents "were perpetrated by anyone other than ordinary employees, nor was the alleged harassment committed in furtherance of [the employer's business."[174] The Fifth Circuit noted, but declined to adopt, the rule in other circuits that "Title VII protects against coworker retaliatory harassment that is known to but not restrained by the employer."[175] Thus, because Lynch does not offer any evidence of retaliatory conduct by FFPO, or by her coworkers on behalf of FFPO, FFPO is entitled to summary judgment on Lynch's retaliation claim.

## C.   *Vicarious Liability Claim*

Lastly, FFPO seeks summary judgment on Lynch's claim that FFPO is vicariously liable for Davenport's alleged attack. FFPO asks the Court to re-consider its decision denying judgment

---

[170] *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (5th Cir. 2006).

[171] *Hernandez*, 670 F.3d at 657.

[172] *Id.*

[173] *Id.*

[174] *Id*. at 657.

[175] *Id*. (citing *Hawkins*, 517 F.3d at 345).

on the pleadings on Lynch's vicarious liability claim.[176] The Court denied that motion because FFPO had not properly briefed whether Lynch's factual allegations failed to state a claim for vicarious liability.[177] Although FFPO does address that issue now, the Court's September 24th Order was correct based on the briefing before the Court at the time. Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration:

> (1)   the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
>
> (2)   the movant presents newly discovered or previously unavailable evidence;
>
> (3)   the motion is necessary in order to prevent manifest injustice; or
>
> (4)   the motion is justified by an intervening change in controlling law.[178]

Considering these factors, the Court declines to reconsider its prior Order. Although FFPO now argues that Lynch's factual allegations fail to state a claim, that argument was available to FFPO when it briefed its motion for judgment on the pleadings. Therefore, none of the above factors support reconsideration.

Alternatively, FFPO argues that it is entitled to *summary judgment* on Lynch's vicarious liability claim.[179] FFPO contends that Lynch has failed to present evidence that Davenport's actions were within the course and scope of her employment, and argues that Davenport's actions were not "employment rooted."[180]

---

[176] *Id.* at 21.

[177] Rec. Doc. 214.

[178] *See, e.g.*, *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 2010 WL 1424398, at *4 (E.D. La April 5, 2010) (Vance, J.) (citations omitted).

[179] Rec. Doc. 248-1 at 23–24.

[180] *Id.*

The Louisiana Supreme Court has explained that "an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment."[181] The employee's conduct must be "so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business."[182] Although employers can be liable for the intentional torts of their employees,[183] the Louisiana Supreme Court has made clear that "[a]n employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during work hours."[184]

To determine whether an employer can be held vicariously liable, Louisiana courts look to the following factors: (1) whether the tortious act was primarily employment rooted; (2) whether the [tortious act] was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment.[185] Although not all four factors must be present to establish vicarious liability, "[t]he particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the course and scope of his employment."[186] Because the mere fact that an

---

[181] *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96); 673 So. 2d 994, 996.

[182] *Id.* (quoting *Barto v. Franchise Enterprises, Inc.*, 23205 (La. App. 2 Cir. 1/17/92); 588 So. 2d 1353, 1356).

[183] *Benoit v. Capitol Mfg. Co.*, 92-2920 (La. 4/12/93); 617 So. 2d 477, 479.

[184] *Baumeister*, 673 So. 2d at 997.

[185] *Id.* at 997–98 (citing *LeBrane v. Lewis*, 53800 (La. 3/25/74); 292 So. 2d 216, 218).

[186] *Id.* (citing *Scott v. Commercial Union Ins. Co.*, 14882 (La. App. 2 Cir. 5/10/82); 415 So. 2d 327, 329).

intentional tort is committed on the business premises during work hours is insufficient, one of the first two factors must be present.[187]

To determine whether the "employment rooted" factor is met, courts look to whether employee's conduct was motivated "to any appreciable extent" by the "purpose of serving" the employer's business.[188] To determine whether the incidental-to-performance factor is met, courts look to whether the conduct was "instituted by purely personal consideration entirely extraneous to the employer's interest," or instead whether it could be "regarded as a risk of harm fairly attributable to the employer's business."[189]

Here, Lynch does not adequately brief the vicarious liability issue. Nevertheless, the Court has already found that there are disputed issues of material fact precluding summary judgment on the issue of whether FFPO can be held vicariously liable for the battery at issue.[190] Specifically, in denying FFPO's motion for summary judgment seeking dismissal of *Davenport*'s vicarious liability claim, the Court ruled that there is a genuine dispute of material fact over whether the fight between Lynch and Davenport occurred within the course of their employment.[191] Therefore, FFPO is not entitled to summary judgment on Lynch's vicarious liability claim.

---

[187] *See id.*

[188] *Id.* at 999 (quoting *Ermert v Hartford Ins. Co.*, 88-2391, 88-2431, 88-2435, 88-2445 (La. 3/12/90); 559 So. 2d 467, 476–77).

[189] *Id.* at 997 (citing *Faust v. Mendoza*, 14687 (La. App. 1 5/25/82); 415 So. 2d 371, 374–75).

[190] Rec. Doc. 196.

[191] *Id.*

## V. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that FFPO's Motion for Summary Judgment Dismissing All Remaining Claims of Plaintiff, Barbara Lynch"[192] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent it seeks dismissal of Lynch's claims for harassment based on age, race discrimination, sexual harassment, and retaliation. The motion is **DENIED** to the extent it seeks dismissal of Lynch's claim that FFPO is vicariously liable for Davenport's alleged battery.

**NEW ORLEANS, LOUISIANA,** this 7th day of March, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[192] Rec. Doc. 248.

31