## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BARBARA LYNCH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-13200** |
| **FLUOR FEDERAL PETROLEUM OPERATIONS, LLC, et al.** | **SECTION: "G"(5)** |

### ORDER AND REASONS

Plaintiff Barbara Lynch ("Lynch") filed this lawsuit against her employer and co-workers arising out of alleged harassment and discrimination that she faced during her employment with Defendant Fluor Federal Petroleum Operations, LLC ("FFPO").[1] Lynch brings this litigation against FFPO, Scott Sclafani ("Sclafani"), and her co-worker Stacie Davenport ("Davenport").[2] Davenport, in turn, brings a counterclaim against Lynch for battery,[3] and a crossclaim against FFPO for (1) vicarious liability; and (2) negligence in failing to protect Davenport from Lynch.[4] On July 28, 2021, the Court denied FFPO's motion for partial summary judgment seeking dismissal of Davenport's vicarious liability claim.[5] Before the Court is FFPO's motion for partial

---

[1]  Rec. Docs. 1, 6.

[2]  Rec. Doc. 6.

[3] Rec. Doc. 57.

[4] Rec. Docs 57, 157.

[5] Rec. Doc. 196.

1

summary judgment seeking dismissal of Davenport's crossclaim for negligence.[6] Davenport opposes the motion.[7]

For the reasons set forth below, the Court denies the motion. The Court finds that there is a dispute of fact as to whether the altercation between Davenport and Lynch was related to employment, and therefore, FFPO is not entitled to summary judgment on its argument that Davenport's negligence claim is barred by the Louisiana Workers Compensation Act. Additionally, there is a genuine dispute of fact as to whether FFPO exercised reasonable care for Davenport's safety, and thus FFPO is not entitled to summary judgment on the merits of Davenport's negligence claim. Therefore, having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

On October 18, 2019, Lynch filed a Complaint in this Court naming as defendants FFPO, Davenport, and Scott Sclafani ("Sclafani") (collectively, "Defendants").[8] On October 26, 2019, Lynch filed an Amended Complaint against Defendants.[9] In the Amended Complaint, Lynch alleges that she is a 49-year-old African American female who was previously employed by FFPO as a Procurement Contract Technician.[10] Lynch alleges that her employment was terminated on

---

[6] Rec. Doc. 244.

[7] Rec. Doc. 265.

[8] Rec. Doc. 1.

[9] Rec. Doc. 6.

[10] *Id.* at 1.

July 31, 2019, for violations of the FFPO Workplace Violence Prevention Procedure and Code of Business Conduct and Ethics.[11]

Lynch alleges, among other things, that on July 30, 2019, she and Davenport got into a verbal altercation.[12] During the incident, Lynch alleges that "Davenport rushed back to [Lynch]'s cubicle, pushed her twice on the chin, grabbed her by the neck and hair and threw [Lynch] on her left side to the floor where she proceeded to mash her face with the palm of her hand and to scratch at her face with her fingertips (which lacked nails)."[13] Lynch alleges that this conduct by Davenport constituted "retaliatory harassment" and battery.[14]

Davenport filed an answer, counterclaim, and crossclaim on July 30, 2020.[15] On January 18, 2021, she filed an Amended Crossclaim.[16] Davenport alleges that from the outset of Lynch's employment, Lynch engaged in "threatening, abusive, and harassing behavior" with co-workers including Davenport.[17] Davenport contends that, although Lynch directed this behavior at various employees, "the worst and most frequent of her deleterious conduct was directed at Caucasian employees like" Davenport.[18] Davenport alleges that she made at least seven reports to her supervisor and FFPO's Human Resources department regarding Lynch's conduct, including two

---

[11] *Id*. at 2.

[12] *Id*. at 18–19.

[13] *Id*. at 19.

[14] *Id*. at 19–20.

[15] Rec. Doc. 57.

[16] Rec. Doc. 157.

[17] *Id.* at 2.

[18] *Id.*

formal complaints to Human Resources representative Ginger Roques ("Roques") and four verbal reports to her direct supervisor, Jorge Perez.[19]

Despite these complaints, Davenport contends that no one from FFPO followed up with her, and no disciplinary action was ever taken against Lynch.[20] Davenport asserts that, on one occasion, Roques told Davenport that she "simply 'didn't know how' to handle the situation with Lynch."[21] Davenport further contends that other employees also complained to FFPO about Lynch's conduct, and those complaints were ignored.[22] Davenport alleges that had FFPO investigated Lynch's employment background, FFPO could have discovered that Lynch had a "history of mental instability and/or other psychological issues."[23]

Davenport alleges that on July 29, 2019, she discovered that Lynch had erased a whiteboard which Davenport used for her work ("the Whiteboard Incident"). After confronting Lynch about it, Davenport avers that Lynch said "I'll erase any f[**]ing thing I want to in this office. You don't own this board. This is Fluor's property, and I'll erase any fucking thing I want."[24] Concerned over this encounter, Davenport alleges that she reported the incident to Roques, and informed Roques that she wanted to go home because she was afraid for her safety.[25]

---

[19] *Id.* at 3.

[20] *Id.* at 4.

[21] *Id.*

[22] *Id.* at 4–5.

[23] *Id.*

[24] *Id.* at 5.

[25] *Id.*

Davenport asserts that after another HR employee emailed Lynch to discuss Davenport's complaint about her, Lynch started an altercation with Davenport and then attacked her by grabbing her lanyard, throwing her to the ground, and pulling out her hair.[26] Davenport alleges that she sustained injuries to her arms, neck, and back.[27] After the incident, Davenport alleges that she and Lynch were separated, and that Roques and Perez instructed her to fill out paperwork describing the attack.[28] Davenport further alleges that although FFPO promised to conduct an investigation, her employment was terminated the following day.[29]

Accordingly, Davenport brings a claim against FFPO for negligence.[30] On November 2, 2021, FFPO filed the instant motion for partial summary judgment.[31] On November 23, 2021 Davenport filed an opposition brief.[32] On December 3, 2021, with leave of Court, FFPO filed a reply.[33]

---

[26] *Id.* at 7.

[27] *Id.* at 6.

[28] *Id.*

[29] *Id.* at 8.

[30] Rec. Doc. 157.

[31] Rec. Doc. 244

[32] Rec. Doc. 265.

[33] Rec. Doc. 281.

## II. Parties' Arguments

### A.    FFPO's Arguments in Support of the Motion

FFPO seeks dismissal of Davenport's negligence claim.[34] First, FFPO argues that Davenport's claim is barred by worker's compensation immunity. FFPO contends that "[c]laims by employees that seek to recover for injuries that allegedly occurred as a result of employer negligence are generally barred by worker's compensation immunity."[35] Thus, FFPO argues that Davenport is barred from asserting any negligence claims against FFPO, and therefore it is entitled to summary judgment on that claim.[36]

Alternatively, FFPO argues that it is entitled to summary judgment because it was not reasonably foreseeable to FFPO that Lynch would attack Davenport.[37] Although FFPO acknowledges that Davenport reported Lynch for "petty slights," FFPO argues that neither Davenport nor any other employee ever reported that Lynch made threats of violence.[38] FFPO contends that the record is "devoid of any evidence that [Lynch] had ever engaged in or threatened physical violence."[39] FFPO points out that of the ten fact witnesses who have been deposed, none of them testified that the altercation between Davenport and Lynch was foreseeable.[40] FFPO

---

[34] Rec. Doc. 244.

[35] Rec. Doc 244–1 at 3.

[36] *Id.*

[37] *Id.* at 4.

[38] *Id.*

[39] *Id.* at 8.

[40] *Id*. at 8–9.

argues that Davenport's complaints about Lynch are insufficient to put FFPO on notice that Lynch would become violent.[41] FFPO further argues that although Davenport testified that Lynch's reaction when Davenport confronted her about the White Board Incident made Davenport fearful, "Davenport's only evidence to suggest that Lynch's violence was foreseeable is her own speculation."[42] As a result, FFPO argues that this claim cannot survive summary judgment.[43]

Next, FFPO contends that it is entitled to summary judgment because Davenport cannot show that FFPO failed to take reasonable steps to prevent workplace violence.[44] FFPO asserts that it had a company policy prohibiting violence in the workplace.[45] FFPO further asserts that it conducted a background check on Lynch as it does for all employees.[46] FFPO also argues that it took steps to address Davenport's complaints about Lynch by holding a department wide meeting to address complaints within the department, by complying with Davenport's request for HR to conduct a team-building exercise, and by convening an additional meeting where the CFO of FFPO advised the department's employees to treat each other with respect.[47] Furthermore, FFPO points out that after Davenport reported the White Board Incident, FFPO began an investigation and instructed Lynch to report to HR for questioning.[48] Based on these actions, FFPO argues that

---

[41] *Id*. at 10.

[42] *Id*. at 11.

[43] *Id*.

[44] *Id.*

[45] *Id.*

[46] *Id*.

[47] *Id.* at 12.

[48] *Id.*

Davenport cannot show that FFPO failed to take reasonable steps to protect her under the circumstances, and therefore FFPO is entitled to summary judgment on the negligence claim.

## B.      *Davenport's Arguments in Opposition to the Motion*

In opposition, Davenport argues that her crossclaim is not barred by the Louisiana Workers Compensation Act ("LWCA") because the basis of her negligence claim against FFPO is that a co-employee committed an intentional tort against her, and the LWCA does not apply to intentional torts.[49] Davenport argues that "although this is a negligence claim, it is based upon an intentional tort," and thus contends that the LWCA does not bar her negligence claim against FFPO.[50] Thus, Davenport contends that summary judgment should be denied.

Davenport further argues that there are genuine issues of material fact as to whether Lynch's conduct was reasonably foreseeable and whether FFPO failed to take reasonable steps to prevent the attack.[51] Davenport contends that of the five elements of negligence—duty, breach, cause-in-fact, scope of liability or protection, and damages—the last four elements are "questions for the jury" that the Court cannot decide on a motion for summary judgment.[52] Davenport argues that because "foreseeability and gravity of harm are determined by the unique facts and circumstances of each case," various factual disputes defeat FFPO's motion for summary judgment.[53]

---

[49] Rec. Doc. 265 at 7–8.

[50] *Id.*

[51] *Id.* at 8.

[52] *Id.* at 9.

[53] *Id.*

Davenport argues that FFPO was "repeatedly put on notice of Lynch's continued conduct" and that "such conduct was escalating."[54] Davenport notes that Lynch's conduct "had gotten so bad that Davenport went home crying because she was so upset."[55] Nevertheless, Davenport contends that "nothing was done."[56] Davenport further argues that although FFPO "performed a formal investigation into conduct of other employees which Lynch complained of," FFPO "did nothing in response to Davenport's complaints."[57] Davenport also argues that there is no evidence to support the testimony that FFPO conducted a background check on Lynch.[58] In sum, Davenport argues that because the evidence shows that "Lynch was a problem from the get-go, her behavior escalated over time, and nothing was ever done to reprimand her for her behavior," summary judgment should be denied and the jury should be permitted to determine "whether Lynch's conduct was reasonably foreseeable and whether FFPO could have prevented her conduct."[59]

### C.   FFPO's Arguments in Further Support of the Motion

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.* at 10.

[58] *Id.*

[59] *Id.* at 11.

In reply, FFPO re-urges that the negligence claim is barred by the LWCA.[60] FFPO argues that because only the negligence claim is at issue, the "intentional act" exception to the LWCA does not apply.[61] As a result, FFPO contends that the claim is barred.[62]

Furthermore, FFPO argues again that Davenport has not shown that FFPO knew or should have known that Lynch would become violent. First, FFPO contends that even if Lynch's behavior "escalated" prior to the incident, that behavior did not suggest to FFPO that Lynch would attack Davenport.[63] Next, FFPO argues that Davenport's assertion that other employees had problems with Lynch is misleading.[64] Instead, FFPO contends that these other incidents actually involved complaints made by Lynch about other employees, rather than complaints that other employees made about Lynch.[65] FFPO further argues that the complaints that Davenport herself made about Lynch are insufficient to put FFPO on notice of Lynch's potential for violence because all of those reports involved Lynch "acting rudely, not [] acting violently or in a threatening manner."[66] Thus, FFPO contends that it is entitled to summary judgment because it was not foreseeable to FFPO that Lynch would attack Davenport.[67]

---

[60] Rec. Doc. 289 at 1.

[61] *Id.* at 1–2.

[62] *Id.*

[63] *Id.* at 4.

[64] *Id.*

[65] *Id.* at 4–5.

[66] *Id.* at 5.

[67] *Id.* at 6.

Lastly, FFPO re-urges its argument that Davenport cannot show that FFPO failed to take reasonable steps to prevent the fight.[68] FFPO notes that by terminating Lynch and Davenport's employment, FFPO demonstrated "strict adherence" to its policy against workplace violence.[69] Furthermore, FFPO reiterates that it conducted a background check on Lynch prior to hiring her.[70] In response to Davenport's claim that there is "no documentation" of this background check, FFPO points to various pieces of evidence in the record suggesting that it performed a background check.[71] FFPO further argues that Davenport has not disputed the various actions FFPO took to address employee complaints, such as hosting departmental meetings and hosting a team-building exercise.[72] FFPO also notes that it was "in the process of investigating Davenport's complaint about the whiteboard erasure when the fight broke out."[73] Thus, FFPO argues that summary judgment should be granted because it took reasonable steps in response to Davenport's complaints.[74]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[68] *Id.* at 8.

[69] *Id.*

[70] *Id.*

[71] *Id.* On December 13, 2021, the background check was filed into the record under seal. Rec. Doc. 290.

[72] Rec. Doc. 289 at 9.

[73] *Id.*

[74] *Id.*

a matter of law."[75] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[76] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[77] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[78] The nonmoving party may not rest upon the pleadings.[79] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[80]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[81] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the

---

[75] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[76] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[77] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[78] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[79] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[80] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[81] *Celotex*, 477 U.S. at 323.

opponent's claim or defense."[82] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[83] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[84]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[85] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[86] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.

## IV. Analysis

The LWCA provides for compensation where "an employee receives personal injury by accident arising out of and in the course of [her] employment."[87] Generally, compensation under the LWCA is "exclusive of all rights and remedies against [the] employer, any officer or principal of the employer, or any co-employee."[88] However, there is an exception to this rule of exclusivity

---

[82] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[83] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[84] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[85] *Little*, 37 F.3d at 1075 (internal citations omitted).

[86] *Morris*, 144 F.3d at 380.

[87] *Caudle v. Betts*, 87-445 (La. 9/9/87); 512 So.2d 389, 390.

[88] *Id.* at 390.

where the "suit is based on an intentional act."[89] The Louisiana Supreme Court has noted that the "only reasonable conclusion to be drawn from the legislative process" behind the LWCA is that the legislature "rejected attempts to make the exception any broader than 'intentional' acts of the employer," making clear that it was "giving the exception a narrow scope, limited to conduct which is truly intentional."

Davenport argues that her claim is not barred by the LWCA because it is based on "the intentional tort of battery which Davenport alleges Lynch committed against her."[90] The Court has already rejected this argument. In the Court's December 28, 2020 decision on FFPO's Motion to Dismiss the Crossclaim, the Court stated that:

> [I]t is not sufficient that *someone* committed an intentional act that resulted in an injury to an employee; rather, an employee must bring a claim against *the person* alleged to have committed such an act. Davenport's allegations that Lynch committed intentional torts of battery and assault against her do not serve to exempt Davenport's claims against FFPO under the LWCA.[91]

In that Order, the Court also noted that:

> While negligence generally is not actionable under the LWCA for work-related injuries, the LWCA "does not apply to injuries arising out of a dispute with another person or employee over matters *unrelated to* the injured employee's employment." Regarding non-work related injuries, an employer "has a duty to exercise reasonable care for the safety of its employees and to avoid exposing them to unreasonable risks of injury or harm."[92]

The Court then ruled that Davenport had failed to plead sufficient facts for the Court to determine

---

[89] *White v. Monsanto Co.*, 91-148 (La. 9/9/91); 585 So. 2d 1205, 1208.

[90] Rec. Doc. 265 at 7.

[91] Rec. Doc. 141 at 14.

[92] *Id.* at 15.

whether the altercation between Lynch and Davenport was unrelated to their employment—and thus outside the LWCA.[93] The Court granted Davenport leave to amend her crossclaim, which she did on January 18, 2021.[94]

In order to be entitled to summary judgment on the issue of whether Davenport's negligence claim is barred under the LWCA, then, FFPO has the burden of showing that there is no genuine dispute of material fact that the altercation between Lynch and Davenport was related to their employment with FFPO.[95] However, FFPO's Motion does not address this point. FFPO spends only three sentences arguing that the negligence claim is barred by the LWCA. FFPO's argument that the negligence claim is barred by the LWCA is in some tension with its argument, presented at other stages of these proceedings, that it cannot be vicariously liable for Davenport's battery claim against Lynch.[96] In order to succeed on the LWCA argument, FFPO must establish that the altercation was related to employment.[97] And, of course, to succeed on the vicarious liability argument, FFPO must establish that Lynch was acting outside the course of employment.[98] However, the Court has already ruled on another motion for summary judgment that there is a genuine dispute of material fact over whether Lynch's alleged conduct was within the course of her employment for purposes of Davenport's vicarious liability claim.[99] Additionally, in the instant

---

[93] *Id.* at 17.

[94] Rec. Doc. 157.

[95] *Mitchell v. Southern Scrap Recycling, LLC*, 11-2201 (La. App. 1 Cir. 6/8/12); 93 So. 3d 754, 758 ("An employer seeking to avail itself of tort immunity bears the burden of proving its entitlement to immunity.").

[96] Rec. Doc. 176.

[97] *See Carr v. Sanderson Farms, Inc.*, 2016-1064 (La. App. 1 Cir. 2/17/17); 215 So. 3d 437, 440.

[98] *See Baumeister v. Plunkett*, 95-2270 (La. 5/21/96), 673 So. 2d 994.

[99] Rec. Doc. 196.

motion, FFPO has not made any attempt to demonstrate that the conduct was related to employment, and thus within the LWCA. As a result, FFPO is not entitled to summary judgment on this issue.

Next, FFPO argues it is entitled to summary judgment because it was not foreseeable to FFPO that Lynch would attack Davenport. In actions for negligence, Louisiana law requires the plaintiff to prove the following five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).[100]

Whether a duty exists in a particular set of circumstances is a question of law for the Court to decide.[101] The relevant inquiry is "whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty."[102] Under Louisiana law, "[a]n employer has a duty to exercise reasonable care for the safety of its employees and to avoid exposing them to unreasonable risks of injury or harm. If an employer knows or should know of a dangerous condition or person on its premises, the employer is obligated to take reasonable steps to protect its employees."[103] Thus, FFPO, as Davenport's employer, had a duty to exercise reasonable care for Davenport's safety.

---

[100] *Long v. State ex rel. Dept. of Transp. and Development*, 04-485 (La. 6/29/05); 916 So. 2d 87, 101.

[101] *Mathieu v. Imperial Toy Corp.*, 94-952 (La. 11/30/94); 646 So. 2d 318, 322.

[102] *Audler v. CBC Innovis Inc.*, 519 F.3d 239 (5th Cir. 2008) (quoting *Faucheaux v. Terrebonne Consol. Gov't*, 92-930 (La. 2/22/93); 615 So. 2d 289, 292).

[103] *Carr v. Sanderson Farms, Inc.*, 16-1064 (La. App. 1 Cir. 2/17/17); 215 So. 3d 437, 440

FFPO argues, however, that to determine the *existence* of a duty, the Court should look to "the foreseeability of the risk and the gravity of the potential harm."[104] Thus, FFPO argues that because it was not foreseeable that Lynch would violently attack Davenport, FFPO did not owe Davenport a duty to protect her from that kind of harm. FFPO relies on *Jones v. Buck Kreihs Marine Repair, LLC* for that proposition. In *Jones*, however, the Louisiana Fourth Circuit Court of Appeal addresses foreseeability in describing the *causation* element of negligence, rather than the duty element.[105] The court explained that the "essence of the legal cause inquiry is whether the risk and harm encountered by the plaintiff fall within the scope of protection of the duty."[106] Under Louisiana law, "legal cause is a mixed question of law and fact for the jury (or other fact-finder) to decide."[107] For the reasons explained below, the Court finds that whether Lynch's allegedly violent attack was foreseeable to FFPO—and thus whether FFPO's conduct was the legal cause of Davenport's injury—creates a genuine dispute of material fact for the jury to decide at trial.

FFPO also cites *Taylor v. Shoney's Inc.* for the proposition that the duty inquiry is "whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff from ***this type of harm arising in this manner***."[108] In that case, the plaintiff asserted a negligence claim against the defendant after one of the defendant's employees ("Earp"), shot and killed the

---

[104] Rec. Doc. 244–1 at 4.

[105] *Jones v. Buck Kreihs Marine Repair, LLC*, 13-0083 (La. App. 4 Cir. 8/21/13); 122 So. 3d 1181, 1186

[106] *Id.*

[107] *Chatman v. Southern University at New Orleans*, 15-1179 (La. App. 4 Cir. 7/6/16); 197 So. 3d 366, 375 (citing *Parents of Minor Child v. Charlet*, 13-2879 (La. 4/4/14); 135 So. 3d 1177).

[108] Rec. Doc. 244–1 at 5 (citing *Taylor v. Shoney's, Inc.*, 98-810 (La. App. 5 Cir. 1/26/99); 726 So. 2d 519.

plaintiff's wife with a gun that he had purchased from another employee ("Williams").[109] The Louisiana Fifth Circuit Court of Appeal noted that the relevant duty was for the employer to "exercise reasonable care in the selection of [an] employee" "who in the performance of his duties will have a unique opportunity to commit a crime against a third party."[110] However, the court found that the defendant did not owe a duty to the plaintiff because there was no such "unique opportunity" for either Williams to sell the gun to Earp, or for Earp to buy the gun and murder a third party.[111] The court reasoned as follows:

> There [was] no allegation that [the defendant] was aware that Williams engaged in the illegal transfer of the gun, or that he had done so more than once, or that [defendant] should have been aware of these activities, or that Williams had a propensity or record for engaging in illegal activities. Assuming that [the defendant] had a duty to ensure that employees did not bring guns on the premises, that duty is clearly to protect its customers and other employees; further, the murder did not take place on the premises. For that same reason, the allegation that [the defendant] was negligent in permitting an employee with a criminal record to carry a gun on the premises does not disclose a duty, since the murder took place elsewhere, after working hours.[112]

Thus, the court held that the employer's duty toward third parties was not implicated.[113] Here, however, a different duty is at issue. Employers have a duty to exercise reasonable care for the safety of their employees.[114] Because Davenport was an employee of FFPO, rather than a third party, FFPO had a duty to exercise reasonable care for her safety.

---

[109] *Taylor*, 726 So. 2d at 520–521.

[110] *Id.*

[111] *Id.* at 523.

[112] *Id.*

[113] *Id.*

[114] *Carr*, 215 So. 3d at 440.

18

As to whether it was foreseeable to FFPO that Lynch would attack Davenport, the Court finds that there is a genuine dispute of material fact for the jury to decide. FFPO contends that it was not foreseeable because there is no evidence that Lynch had ever engaged in or threatened physical violence.[115] FFPO points to Lynch's deposition testimony that she had never been in a physical fight prior to the incident with Davenport.[116] FFPO also suggests that none of the witnesses who have been deposed has testified that the fight between Davenport and Lynch was foreseeable.[117] FFPO also highlights deposition testimony from FFPO Director of Human Resources Todd Almquist who testified that he never saw any warning signs of workplace violence.[118] Similarly, FFPO notes that Jorge Perez, who supervised both Lynch and Davenport, testified that he did not see signs of workplace violence.[119]

FFPO contends that prior to the incident with the whiteboard, the only complaints made about Lynch were: 1) that she had a nasty attitude and was not a "team member"; 2) that she "rolled her eyes and engaged in name-calling under her breath"; 3) that she failed to answer question on Mr. Perez's behalf; 4) that she failed to order paper for the stock room; and 5) that she slammed the file room door and told Davenport not to look at her.[120] FFPO argues that none of these were sufficient to put FFPO on notice that Lynch would become violent.[121] Further, although FFPO

---

[115] Rec. Doc. 244–1 at 8.

[116] *Id.*; Rec. Doc 248–5 at 6.

[117] Rec. Doc. 244–1 at 8.

[118] Rec. Doc. 244–1 at 9; Rec. Doc. 248–9 at 6.

[119] Rec. Doc. 244–1 at 9; Rec. Doc. 248–10 at 8.

[120] Rec. Doc. 244–1 at 9–10; Rec. Doc. 248–3.

[121] Rec. Doc. 244–1 at 9.

acknowledges Davenport's testimony that the whiteboard incident made her fearful of Lynch, FFPO asserts that Davenport never reported that that Lynch made any threats to her.[122]

In response, Davenport argues that the attack was foreseeable because Lynch's conduct "escalated" in the weeks and months leading up to the attack.[123] Davenport points to her deposition testimony where she stated that Lynch's conduct got "worse and worse."[124] She further points to the testimony of Jorge Perez, Lynch and Davenport's supervisor, who testified that other employees also had issues with Lynch.[125] Davenport also highlights email communications between Perez and Roques, FFPO's HR supervisor, relating to an incident between Lynch and another employee, Nadine Anthony.[126] Davenport points to another email from Perez to Almquist, informing Almquist that Davenport asked to go home following an incident where Lynch was rude to Davenport.[127] In that email, Perez wrote "Need HR help. Let's discuss."[128] Davenport also notes

---

[122] Rec. Doc. 244–1 at 11.

[123] Rec. Doc. 265 at 9.

[124] *Id.* at 2; Rec. Doc. 248–3.

[125] Rec. Doc. 265 at 2; Rec. Doc 265–3 at 5. In reply, FFPO contends that this testimony refers to complaints that *Lynch* made about others, not complaints that other employees made about Lynch. In support, FFPO cites examples of complaints that Lynch made about other employees. Although this may go the weight the jury assigns to Perez's testimony at trial, it does not conclusively contradict the deposition testimony. When asked if employees other than Scott Sclafani made complaints about Lynch, Perez responded that "others did," and specifically named "Meredith," "T.J." and "Jeanne." Rec. Doc. 265–3 at 5. That FFPO had received numerous complaint's about Lynch creates a dispute of fact as to whether, in the aggregate, it was foreseeable to FFPO that Lynch would attack Davenport.

[126] Rec. Doc. 265 at 3; Rec. Doc. 265–5 at 2. As FFPO points out in reply, the email actually describes a complaint made *by Lynch* about Nadine Anthony. The email quotes a text from Lynch that stated as follows:

> Also, I'm growing very TIRED of people feeling brazen enough to come into my personal space to YELL at me. Nadine just publicly, loudly scolded me for printing to the printer behind her.

[127] Rec. Doc. 265 at 3; Rec. Doc. 265–5 at 1.

[128] *Id.*

Perez's deposition testimony where he stated that there were "plenty of incidents, reports back and forth" relating to "incidents Barbara Lynch had with other co-workers."[129] Davenport also highlights FFPO's statement of uncontested facts, which notes that Lynch referred to other employees as "ho," "prick" and "piece[] of crap."[130] Davenport also testified that Lynch would pass by her and make inappropriate comments under her breath, such as "Bitch. You white Bitch. You ho. You're worthless. You're useless."[131] Davenport testified that she reported the name calling to Perez on more than one occasion.[132]

Thus, Davenport has produced various pieces of record evidence regarding FFPO's knowledge of Lynch's inappropriate behavior. The Court finds that this evidence is sufficient to demonstrate a genuine issue of material fact as to whether Lynch's alleged attack was foreseeable to FFPO.

FFPO cites *Cote v. City of Shreveport* to support its argument that FFPO was not on notice of Lynch's potential for *violence*.[133] In that case, the Louisiana Second Circuit Court of Appeal affirmed a district court's order granting summary judgment in favor of the employer because there was "absolutely nothing in the record to suggest that the [employer] had any prior knowledge that [the employee] had a propensity to act violently."[134] However, the appellate court emphasized that

---

[129] Rec. Doc. 265 at 3.; Rec. Doc 265–3 at 8.

[130] Rec. Doc. 244–1. However, FFPO's statement of uncontested facts notes that this conduct was "[u]nbeknownst to FFPO." Rec. Doc 244–2 at 9.

[131] Rec. Doc. 248–3 at 7.

[132] *Id.* at 6–8.

[133] Rec. Doc. 244–1 at 5.

[134] *Cote v. City of Shreveport*, 46,571 (La. App. 2 Cir. 9/21/11); 73 So. 3d 435, 439.

the employer had no record of any complaint's made against the employee.[135] Here, on the other hand, as documented above, Davenport has pointed to evidence in the record demonstrating that FFPO was aware of complaints about Lynch's inappropriate conduct. Therefore, the Court finds that there is a genuine dispute of material fact as to whether Lynch's allegedly violent behavior was foreseeable to FFPO. Accordingly, FFPO is not entitled to summary judgment on this basis.

Next, Defendants assert they are entitled to summary judgment because Davenport cannot demonstrate that FFPO failed to act reasonably.[136] FFPO points out that its company policy prohibited violence in the workplace, and that FFPO terminated both Lynch and Davenport for violation of this policy.[137] FFPO provides evidence that it conducted a background check on Lynch pursuant to its regular screening process.[138] Furthermore, FFPO points to other evidence in the record that shows it took steps to address Davenport's complaints about Lynch. In response to Davenport's complaints regarding Lynch's eye rolling, name calling, and failure to perform work tasks, FFPO held a department-wide meeting to address interpersonal issues in the department.[139] During the meeting, Senior Director of Procurement Brian Roberts stated that HR had received complaints about employee behavior and that behavior "must stop."[140] Furthermore, FFPO's HR

---

[135] *Id.* at 437.

[136] FFPO cites to various exhibits and depositions in support of its motion. However, FFPO has not provided the Court with all of the depositions. FFPO states that it "has not yet received the transcript for this deposition but will supplement this filing with the cited pages upon receipt." Rec. Doc. 244–1 at 12. The Court will assume that FFPO accurately conveying the contents of these depositions.

[137] Rec. Doc. 244–1.

[138] *Id.*; Rec. Doc. Doc. 248–4 at 5.

[139] Rec. Doc. 244–1 at 11–12.

[140] *Id.* at 12.

Department complied with Davenport's request to conduct a team building exercise,[141] and hired a company to lead off-site exercises for employees in the Procurement Department.[142] FFPO also held another department meeting where the CFO advised the department to treat one another with respect.[143] After the White Board Incident, an HR employee began an investigation and instructed Lynch to report to HR for questioning.[144] Based on these facts, FFPO contends that it is entitled to summary judgment on Davenport's negligence claim because it acted reasonably.

Davenport does not contest that FFPO took most of these actions. However, Davenport does assert that there is "no documentation" that FFPO performed a background check.[145] Nevertheless, Davenport argues that HR took no action after Perez emailed other FFPO employees about an incident between Lynch and Davenport stating "Need HR help. Let's discuss."[146] Davenport then compares FFPO's response to Davenport's complaints to its handling of Lynch's complaints. Davenport asserts that HR performed formal investigations based on Lynch's complaints, but "did nothing in response to Davenport's complaints."[147] However, Davenport does not dispute that FFPO held meetings or conducted a team building exercise, as discussed above.

Although FFPO has offered undisputed evidence of numerous actions it took in response to complaints about workplace conduct, the Court cannot find, as a matter of law, that FFPO was

---

[141] *Id.*; Rec. Doc. 248–3 at 6–7.

[142] Rec. Doc. 255–1 at 12; Rec. Doc 248–3 at 21–22.

[143] Rec. Doc. 244–1 at 12; Rec. Doc 248–5 at 29.

[144] Rec. Doc. 244–1 at 12.

[145] Rec. Doc. 265 at 2. However, FFPO has since filed the background check into the record under seal. Rec. Docs. 284, 290.

[146] Rec. Doc. 265 at 3.

[147] *Id.* at 10.

not negligent. The Fifth Circuit has explained that "the use of summary judgment is rarely appropriate in negligence … cases, even where the material facts are not disputed."[148] That is because "it is usually for the jury to decide whether the conduct in question meets the reasonable man standard."[149] Thus, despite the undisputed evidence regarding FFPO's actions, whether or not these steps were reasonable under the circumstances is ultimately a question for the jury to decide. Accordingly, the motion for summary judgment must be denied.

### V. Conclusion

Considering the foregoing,

**IT IS HEREBY ORDERED** that FFPO's "Motion for Partial Summary Judgment Dismissing Negligence Claim of Co-Defendant Stacie Davenport"[150] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this __8th__ day of March, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[148] *Davidson v. Stanadyne, Inc.*, 718 F.2d 1334, 1338–39 (5th Cir. 1983).

[149] *Matthews v. Ashland Chemical, Inc.*, 703 F.2d 921, 925 (5th Cir. 1983).

[150] Rec. Doc. 244.