UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BARBARA LYNCH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-13200** |
| **FLUOR FEDERAL PETROLEUM OPERATION, LLC** | **SECTION: "G"** |

## ORDER AND REASONS

Before the Court is Plaintiff Barbara Lynch's ("Lynch") "Motion to Overrule Magistrate's Order" denying Lynch's Motion to Compel Entry to FFPO Building 990, Lynch's former workplace where her altercation with Stacie Davenport occurred.[1] Defendant Fluor Federal Petroleum Operation, LLC ("FFPO") opposes the motion.[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court overrules Lynch's objections and affirms the Magistrate Judge's October 5, 2021 Order.

## I. Background

This litigation arises out of Lynch's former employment with FFPO. Lynch alleges that she is a 49-year-old African American female who was employed by FFPO as a Procurement Contract Technician.[3] Lynch alleges that her employment was terminated on July 31, 2019, for violations of the FFPO Workplace Violence Prevention Procedure and Code of Business Conduct

---

[1] Rec. Doc. 239.

[2] Rec. Doc. 252.

[3] *Id.* at 1.

1

and Ethics ("Workplace Violence Policy").[4]

In the Amended Complaint, Lynch brings claims against FFPO for sexual harassment ("Count 1") and against Scott Sclafani ("Sclafani") for battery ("Count 2").[5] Lynch alleges that "around her fifth week at work, Sclafani began to appear in her work area unnecessarily about 1-2 times/week."[6] Lynch asserts that Sclafani would attempt to engage in non-work related conversation, stand uncomfortably close to her, and sometimes touch her shoulder.[7] On February 21, 2019, Lynch alleges that Sclafani trapped Lynch in a co-worker's cubicle and forcibly massaged her shoulder.[8] Lynch asserts that Sclafani blocked the cubicle doorway by extending his arms across it, forcing her to duck under his arm to leave.[9] Lynch contends that FFPO "had notice of Sclafani's having previously sexually harassed two co-workers."[10]

Lynch also brings a claim against FFPO for race discrimination ("Count 3").[11] Lynch alleges that another co-worker, Angela Keller, displayed racial animus to Lynch by excluding Lynch from work functions, reducing her workload, and excluding her from performing certain work.[12] Lynch alleges that on December 6, 2018, Ms. Keller called Lynch a "n***er."[13] Lynch

---

[4] *Id.* at 2.

[5] *Id.* at 4–5.

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 4–5.

[10] *Id.* at 5.

[11] *Id.* at 5–12.

[12] *Id.*

[13] *Id.* at 8.

also alleges that on July 22, 2019, Sclafani called her a "black b***h."[14]

Further, Lynch brings claims against FFPO, Sclafani, and Davenport for "retaliatory harassment" and "age harassment" ("Count 4").[15] Lynch alleges that she was subjected to "retaliatory harassment" by her co-workers after making complaints to supervisors.[16] For example, Lynch claims that on February 22, 2019, she informed her supervisor, Jorge Perez ("Perez"), of Sclafani's conduct that had occurred the day before.[17] From this point forward, Lynch alleges that Sclafani, Davenport, and the rest of her work group began to treat Lynch differently.[18] Lynch alleges that when co-workers saw her "in the hallway they would grab the walls and press themselves against the walls."[19] According to the Amended Complaint, on March 14, 2019, Sclafani passed by Lynch's cubicle and warned Lynch, "You cannot hide from me. You better be scared of me. You can't run from me."[20] On March 16, 2019, Lynch claims she submitted a written complaint to Ginger Roques ("Roques"), a manager in Human Resources, about Sclafani and Davenport.[21] Lynch asserts that thereafter she was moved to a cubical further away from Sclafani.[22] Lynch alleges that on May 14, 2019, Perez told Lynch directly: "I think the group is

---

[14] *Id.*

[15] *Id.* at 12–20.

[16] *Id.*

[17] *Id.* at 12.

[18] *Id.* at 13.

[19] *Id.* at 14.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 15.

3

not ready for someone who looks like you and me. I think that's why you are being mistreated."[23] Lynch claims that she again spoke to Roques about Sclafani and Davenport on May 20, 2019.[24]

Lynch also claims that she was subject to "age harassment."[25] Lynch asserts that on March 21, 2019, she "found a photograph of an old gray-haired lady on her desk."[26] Lynch alleges that a similar photograph was left in or near her cubicle on several occasions.[27] Additionally, Lynch alleges that she later found a soiled bandage on the floor in her cubicle.[28] Lynch states that she "interpreted this as a suggestion that she was unclean and a threat that she might be injured and need a bandage."[29]

Lynch alleges that she complained to her superiors at FFPO about the harassment by Sclafani and Davenport on several occasions.[30] According to the Amended Complaint, "[a]fter each complaint the known harassment by Sclafani and Ms. Davenport remained about the same, but the general office mistreatment would get worse."[31]

Lynch alleges that on July 30, 2019, she and Davenport got into a verbal altercation.[32] During the incident, Lynch alleges that "Davenport rushed back to Lynch's cubicle, pushed her

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 17.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 19.

[31] *Id.*

[32] *Id.* at 18–19.

twice on the chin, grabbed her by the neck and hair and threw Lynch on her left side to the floor where she proceeded to mash her face with the palm of her hand and to scratch at her face with her fingertips (which lacked nails)."[33] Lynch claims that she "continues to feel pain in some of those areas."[34] Lynch alleges that this conduct by Davenport constituted a battery ("Count 5").[35]

Lynch alleges that her employment was terminated on July 31, 2019, for violations of FFPO's Workplace Violence Policy.[36] Lynch contends that her termination was caused by FFPO's "failure to take effective remedial action against the retaliatory harassment which culminated in the attack by Ms. Davenport making the termination a product of the harassment and therefore wrongful."[37] Therefore, Lynch brings a claim against FFPO for "wrongful termination" ("Count 6").[38] In sum, Lynch brings the following claims against FFPO: (i) sexual harassment; (ii) race discrimination; (iii) age discrimination and retaliation; and (iv) wrongful termination.

On September 19, 2021, Lynch filed a Motion to Compel Entry to FFPO Building 990, where Lynch's altercation with Davenport occurred.[39] This motion was referred to the Magistrate Judge for decision pursuant to Local Rule 72.1. FFPO opposed the motion.[40] On October 5, 2021, the Magistrate Judge denied the Motion to Compel, finding that a physical inspection of the

---

[33] *Id.* at 19.

[34] *Id.*

[35] *Id.* at 19–20. The alleged battery is incorrectly labeled Count 4 in the Amended Complaint.

[36] *Id.* at 20.

[37] *Id.*

[38] *Id.* The alleged wrongful termination is incorrectly labeled Count 5 in the Amended Complaint.

[39] Rec. Doc. 212.

[40] Rec. Doc. 217.

premises was unnecessary and disproportionate to the needs of the case.[41] In the Order, the Magistrate Judge noted that Lynch's discovery request was propounded in December 2020, and that Lynch "took no action to compel a response to that request, choosing instead to send a second, duplicative request in August 2021 and then withdrawing that request."[42] The Magistrate Judge further noted that a "bizarre practice of propounding discovery, withdrawing it and then propounding it again has permeated this case."[43] The Magistrate Judge explained that "[a]ll of the witnesses have already been deposed using a schematic of the workspace, which indicates to the Court that a physical inspection now is wholly unnecessary."[44] Furthermore, given that the building is currently closed due to COVID-19 "and the steps that would have to be taken to secure an inspection after the discovery deadline," the Magistrate Judge found that "the request is also disproportionate to the needs of the case."[45]

On October 20, 2021, Lynch filed the instant "Motion to Overrule Magistrate's Order" Denying Lynch's Motion to Compel Entry to FFPO Building 990.[46] On November 9, 2021, FFPO filed an opposition to the motion.[47]

## II. Parties' Arguments

### A. *Lynch's Objections to the Magistrate Judge's Order*

Lynch objects to the Magistrate Judge's October 5, 2021 Order because Lynch asserts that

---

[41] Rec. Doc. 224.

[42] *Id.* at 1.

[43] *Id.*

[44] *Id.*

[45] *Id.* at 2.

[46] Rec. Doc. 239.

[47] Rec. Doc. 252.

the Magistrate Judge erred: (1) in finding that a physical inspection was not necessary or relevant; (2) in finding that any such inspection would occur after the discovery deadline because of Lynch's "delinquent request"; (3) in finding that all witnesses have been deposed using a schematic of the workplace; and (4) in finding that the request is disproportionate to the needs of the case.[48]

First, Lynch appears to object to a number of statements in the Magistrate Judge's Order. Lynch takes issue with the Magistrate Judge's suggestion that the request was duplicative.[49] Lynch argues that she filed one request to enter building 990 in December 2020, and then a second request to enter buildings 950 and 990 in August 2021, and that the second request was then withdrawn to "narrow the request."[50] Lynch further objects to the Magistrate Judge's statement that Lynch has engaged in a "bizarre practice of propounding discovery, withdrawing it and then propounding it again," arguing that the Magistrate Judge had "no evidence in support of that conclusion" and that it constitutes an abuse of discretion.[51] Lynch next objects to the Magistrate Judge's statement that "[i]t appears that this motion would not have been filed at all if [FFPO] had not objected to the August 2021 request for inspection even though [Lynch's] counsel had already withdrawn it."[52] Lynch contends that this was "pure speculation" and an abuse of discretion.[53] Lastly, Lynch objects to the Magistrate Judge's suggestion that the discovery request was delinquent.[54] Lynch asserts that the December 2020 request was served on August 2, 2021, at which time the discovery

---

[48] Rec. Doc. 239-1 at 2.

[49] *Id.* at 3.

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.*

deadline was October 7, 2021.[55]

Second, Lynch objects to the Magistrate Judge's finding that the inspection would occur after the discovery deadline.[56] Lynch argues that the discovery deadline was extended to November 7, 2021, and that the Magistrate Judge "bypassing this extension was error and an abuse of discretion."[57]

Third, Lynch objects to the Magistrate Judge's conclusion that the inspection is not necessary because "[a]ll of the witnesses have already been deposed using a schematic of the workspace."[58] Lynch argues that FFPO claimed only that all 10 witnesses "could have been deposed" on that schematic, and the Magistrate Judge's finding that 10 witnesses were deposed using the schematic was "fact error and an abuse of discretion."[59] Lynch also objects to the Magistrate Judge's suggestion that Lynch's withdrawal of the August 2021 inspection request supports the conclusion that an inspection is no longer necessary, arguing that the Magistrate Judge's suggestion is "unfounded and speculative."[60]

Lastly, Lynch objects to the Magistrate Judge's conclusion that the request is disproportionate to the needs of the case. Lynch argues that the Magistrate Judge did not consider the magnitude of Lynch's injuries.[61] Lynch argues that liability for these injuries "depends totally on who started the fight," and it is therefore "critical to 'eye ball' the fight scene and have [Lynch]

---

[55] *Id.*

[56] *Id.*

[57] *Id.* at 4.

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.* at 4–5.

explain where things happened."[62] Furthermore, Lynch argues that "[n]umerous incidents of harassment also militate in favor of inspection," because understanding these incidents of harassment "would be greatly benefited by inspection" because "there is no substitute for inspection."[63] Additionally, Lynch appears to argue that that the request is not too burdensome because "[t]he building does not seem to be totally closed," as FFPO claims only that the building is closed to "daily workers."[64] Lynch further argues that permission to enter "can be obtained through upper management and the Department of Energy."[65]

### B. FFPO's Opposition to Lynch's Motion

FFPO argues that the Magistrate Judge's decision was not clearly erroneous or contrary to law. FFPO highlights two of the reasons that the Magistrate Judge gave for denying Lynch's motion to compel: (1) the questionable relevance of a physical inspection and (2) that the request is disproportionate to the needs of the case.[66]

First, FFPO argues that the Magistrate Judge's conclusion that the inspection would not be relevant was not erroneous. FFPO contends that the floorplan schematic is a "more convenient, less burdensome source" for the information that Lynch seeks to gain through inspection.[67] FFPO notes that Lynch "relied on that schematic throughout the entire discovery period in this matter."[68] FFPO further points out that Lynch "expressly referred to and attached the schematic to certain

---

[62] *Id*. at 5.

[63] *Id*.

[64] *Id*.

[65] *Id*.

[66] Rec. Doc. 252 at 4.

[67] *Id*.

[68] *Id*.

witness depositions."[69] FFPO argues that Lynch offers no explanation of the value of a physical inspection other than "her conclusory assertion" that "there is no substitute for seeing the 'scenes of the crimes.'"[70]

Second, FFPO argues that the Magistrate Judge's conclusion that the request was disproportionate to the needs of the case was supported by the facts.[71] FFPO points out that the office was closed due to COVID-19, and that FFPO would need to obtain permission from the Department of Energy.[72] Furthermore, FFPO argues that the submission date for Lynch's motion to compel entry was one day prior to the expiration of the discovery deadline.[73] Thus, FFPO highlights the Magistrate Judge's reasoning that the parties would not have had time to conduct the inspection prior to the expiration of the discovery deadline.[74]

### III. Legal Standard

#### A. *Standard of Review of a Magistrate Judge's Order*

With certain exceptions not applicable here, a district judge "may designate a magistrate judge to hear and determine any pretrial matter pending before the [district] court."[75] When objections are raised to non-dispositive pretrial matters, a district court must consider them and "modify or set aside any part of the order that is clearly erroneous or contrary to law."[76] Under this

---

[69] *Id*. at 5.

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] 28 U.S.C. § 636(b)(1)(A).

[76] Fed. R. Civ. P. 72(a).

highly deferential standard, the court will reverse only when "on the entire evidence [it] is left with a definite and firm conviction that a mistake has been committed."[77]

**B.    *Legal Standard on a Motion to Compel Entry***

Under Rule 34(a)(2) of the Federal Rules of Civil Procedure, a party may request "within the scope of Rule 26(b) . . . to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it."[78] Under Rule 26(b), parties may obtain discovery of any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[79]

### IV. Analysis

Lynch objects to the Magistrate Judge's denial of her Motion to Compel primarily based on a number of statements in the Magistrate Judge's Order relating to Lynch's discovery practices, the timeliness of Lynch's discovery request, the extent to which the schematic of the workplace has been used in depositions, and the current discovery deadlines. However, the Court need not consider each of these objections because the Court affirms the Magistrate Judge's conclusion that a physical inspection of building 990 is not relevant and would be disproportionate to the needs of the case.

Lynch cannot show that the Magistrate Judge's conclusion that inspection would be irrelevant and disproportionate to the needs of the case was "clearly erroneous or contrary to law."

---

[77] *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

[78] Fed R. Civ. P. 34(a)(2).

[79] Fed. R. Civ. P. 26(b).

11

Lynch appears to argue that an inspection is relevant because there are no photographs or video recordings of the fight between Lynch and Davenport, and liability for Lynch's injuries "depends totally on who started the fight."[80] Furthermore, Lynch claims that an inspection will support Lynch's harassment claims.[81] Lynch states that "[a]ppreciation of all of these would be greatly benefitted by inspection. If a picture is worth a 1000 words, a schematic is worth no more. There is no substitute for an inspection."[82]

However, Lynch does not attempt to explain *why* inspection of building 990 would help Lynch demonstrate that Davenport started the fight. Nor does Lynch attempt to explain how inspection of building 990 would support Lynch's harassment claims. Lynch's Motion to Compel stated only that "there is no substitute for seeing the 'scenes of the crimes'" and that Lynch's counsel "needs to get a first-hand sense of the distances involved."[83] The Court agrees that a physical inspection of building 990 is of little relevance to Lynch's claims for battery and harassment. Therefore, the Court finds that the Magistrate Judge's conclusion was not "clearly erroneous or contrary to law."[84]

The Magistrate Judge further concluded that the building is currently closed due to COVID-19, and the steps necessary to secure an inspection would be disproportionate to the needs of the case.[85] Given that the Court agrees that the inspection is of little relevance, the Court cannot say

---

[80] Rec. Doc. 239-1 at 5.

[81] *Id.*

[82] *Id.*

[83] Rec. Doc. 212-1.

[84] Fed. R. Civ. P. 72(a).

[85] Rec Doc. 224.

that it was clearly erroneous or contrary to law for the Magistrate Judge to conclude that, because Building 990 is closed due to COVID-19, an inspection would be disproportionate to the needs of the case. Accordingly, Lynch has not shown that the Magistrate Judge's Order was clearly erroneous or contrary to law.

### V. Conclusion

Based on the foregoing, the Court overrules Lynch's objections and affirms the Magistrate Judge's October 5, 2021 Order because Lynch has not shown that the Order was clearly erroneous or contrary to law. Accordingly,

**IT IS HEREBY ORDERED** that Lynch's Objections[86] are **OVERRULED** and the Magistrate Judge's October 5, 2021 Order is **AFFIRMED**.

**NEW ORLEANS, LOUISIANA**, this  11th  day of March, 2022.

                                                 **NANNETTE JOLIVETTE BROWN**
                                                 **CHIEF JUDGE**
                                                 **UNITED STATES DISTRICT COURT**

---

[86] Rec. Doc. 239.